2013 UT App 97

# THE UTAH COURT OF APPEALS

DON BRADY, SINIKKA BRADY, DON BRADY INTERIOR DESIGN, AND FINNISH TOUCH DAY SPA,

*Plaintiffs, Appellees, and Cross-appellants,*

*v.*

KANG S. PARK, BANK OF UTAH, AND PAUL M. HALLIDAY,

*Defendants, Appellants, and Cross-appellees.*

Opinion
No. 20110208-CA
Filed April 18, 2013

Third District, Salt Lake Department
The Honorable Joseph C. Fratto Jr.
No. 060917206

Robert E. Mansfield, Christine R. Poleshuk, and
Nathan E. Wheatley, Attorneys for Appellants and Cross-appellees

Clark R. Nielsen and Kathryn J. Steffey, Attorneys for Appellees
and Cross-appellants

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

VOROS, Judge:

¶1     This is a dispute over a $675,000 promissory note. The note was amortized over thirty years, but a balloon payment was due in about ten years. Although Appellees (the Bradys) made every monthly payment for nearly ten years—albeit some late—

Appellants (Park) won a judgment against them for more than $2.4 million.

¶2     On appeal, both parties contest the trial court's reading of the note. For different reasons, both challenge the trial court's ruling with respect to compound interest. In addition, Park challenges the trial court's refusal to enforce the note's 10% late fee, while the Bradys challenge the trial court's enforcement of the 20% default interest rate. Finally, the Bradys challenge the trial court's exclusion of evidence and dismissal of their claim for breach of the implied covenant of good faith and fair dealing. We affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND

¶3     This dispute arises from a seller-financed real estate transaction. The Bradys purchased commercial property from Park in 1996 for $750,000. In connection with the purchase, they gave him two promissory notes. The smaller note was for $80,625 and the larger for $675,000. Each note was secured by two trust deeds: one on the commercial property and one on a Summit County investment property owned by the Bradys. Only the larger note (the Note) is at issue here. The Note bore interest at the rate of 10% per year on the unpaid principal. It called for monthly payments starting in January 1997 of $5,923.61 and a balloon payment in October 2006 consisting of "the entire principal balance together with interest thereon." Of relevance here, the Note specified two consequences for a late payment—a 10% late fee and a 20% default interest rate:

> If payment is not made within five (5) days of due date, a late fee of 10 per cent will be due. If payment is not made within 5 days of due date the entire balance shall bear interest at the rate of 20% until note is brought current.

The Note was prepared by a title company. However, according to the title company's attorney, the 20% default interest provision was not boilerplate but was included "at the instructions of Dr. Park."

¶4    The Bradys made the first three payments on time but made the April 1997 payment late. On May 2, 1997, they made a double payment comprised of the April and May payments plus a 10% late fee for the April payment, but paid no default interest. The Bradys made other payments late but never missed a payment. Seeking to refinance the Note, and believing their payments had kept the Note current, the Bradys approached Park through a bank loan officer in 2000 to obtain a payoff amount.

¶5    According to the Bradys, Park did not respond to their payoff request until 2002, when he provided a payoff amount between $1.4 million and $1.5 million. That is when the Bradys first learned that Park believed the Note had not been current since March 1997. The Bradys disputed Park's calculation and over the next four years asked Park for a corrected payoff. They claim Park did not respond until October 18, 2006—thirteen days before the balloon payment was due—when he notified the Bradys that the payoff amount was $2,585,398. Park calculated these amounts assuming that the Note had not been current since the March 1997 payment and thus bore interest at 20%. Litigation ensued.

¶6    In October 2006, after receiving the second payoff amount, the Bradys sued Park, seeking a judicial determination of the amount due. The Bradys also alleged predatory lending and breach of the implied covenant of good faith and fair dealing and sought damages for Park's alleged refusal to accept their tenders of payment. Park counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

¶7    After a four-day bench trial and two days of supplemental hearings, the trial court ruled that the Note unambiguously provided for compound default interest and that it had not been

current since March 1997. The trial court concluded that the Note had not been current since that date because the Bradys had failed to pay all accrued default interest. The trial court concluded that, under the Note, "if a payment was late, any amount then owing, including principal and accrued interest, would bear interest at the rate of 20% until the note returned to a current status" and that "[t]his agreement under the [Note] has the result of compounding interest being charged, on an annual basis, during the delinquent period." In effect, the trial court ruled that the amount accrued under the 20% default interest rate was due not with the balloon payment but with each monthly payment. However, the trial court also ruled that the 10% late fee was "not allowed[,] because it is not a measure of damages that can be awarded by the Court." A final judgment was entered in February 2011, awarding Park $2,440,845 (as of June 2010) plus $179,340.97 in attorney fees and costs.

¶8    Park appeals.[1] He contends that the trial court erred (1) in calculating compound interest on an annual rather than a monthly basis and (2) in concluding that the 10% late fee provision was an unenforceable penalty.

¶9    As appellees and cross-appellants, the Bradys argue that the trial court erred (1) in ruling that the Note calls for compound interest at all, (2) in ruling that the Note requires all accrued default interest to be paid for the Note to be brought current, (3) in ruling that the 20% default interest provision is enforceable, (4) in excluding evidence of tender, and (5) in dismissing their claim for breach of the implied covenant of good faith and fair dealing.

ISSUES AND STANDARDS OF REVIEW

¶10    Park first contends that the trial court erred in ruling that the Note called for interest to be compounded annually rather than

---

1. Park's appeal and the Bradys' cross-appeal were filed on the same day.

monthly. The Bradys respond that the trial court erred in ruling that the Note called for compound interest at all. A promissory note "is a contract that is interpreted according to the well-settled rules of contract construction." *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 16, 54 P.3d 1139. We review "a district court's interpretation of a contract for correctness, giving no deference to the district court. Whether a contract is ambiguous is a question of law, which we also review for correctness." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933; *see also Richardson v. Hart*, 2009 UT App 387, ¶ 6, 223 P.3d 484.

¶11    Park next contends that the trial court erred in concluding that the 10% late fee provision was an unenforceable penalty and in placing the burden of proof on the party seeking to enforce a liquidated damages clause. "The determination of whether a contract is unconscionable is . . . a question of law for the court," which we review for correctness. *Sosa v. Paulos*, 924 P.2d 357, 360 (Utah 1996); *Hi-Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 8, 182 P.3d 417. "[W]hether the trial court placed the burden of proof on the appropriate party [is a] question[] of law, which we review for correctness." *Fisher v. Fisher*, 2009 UT App 305, ¶ 7, 221 P.3d 845.

¶12    On cross-appeal, the Bradys contend that the trial court erred in interpreting and in enforcing the 20% default interest provision. We review these claims for correctness. *See Bodell*, 2009 UT 52, ¶ 16.

¶13    The Bradys also contend that the trial court improperly excluded as irrelevant certain documents offered in support of their claim that they had tendered full payment to Park in 2000. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194.

¶14  Finally, the Bradys contend that the trial court erred in dismissing their claim for breach of the implied covenant of good faith and fair dealing. "When reviewing the denial of a motion for involuntary dismissal, [we] defer to the trial court's findings and inferences under a clearly erroneous standard and review the trial court's conclusions of law for correctness." *Markham v. Bradley*, 2007 UT App 379, ¶ 13, 173 P.3d 865.


ANALYSIS

I. The Note Does Not Call for Compound Interest

¶15  Park contends that the trial court misread the Note. He maintains that because the Note is "unambiguous and specifically calls for interest payments on a monthly basis, the trial court erred in its ruling that interest should be compounded annually." As calculated by Park's trial expert, by the time the balloon payment was due in October 2006, the principal on the Note, including unpaid interest that he had converted to principal, had grown from $675,000 to $2,590,422.04. The Bradys respond that the Note called for simple interest only.

¶16  Compound interest is defined as "interest paid on both the principal and the previously accumulated interest." *Black's Law Dictionary* 887 (9th ed. 2009). "'Compound interest means interest on interest, in that accrued interest is added periodically to the principal, and interest is computed upon the new principal thus formed . . . .'" *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 554 (Utah Ct. App. 1989) (quoting 45 Am. Jur. 2d *Interest and Usury* § 76 (1969)).

¶17  "Compound interest is not favored by the law." *Watkins & Faber v. Whiteley*, 592 P.2d 613, 616 (Utah 1979) (per curiam); *see also City of Hildale v. Cooke*, 2001 UT 56, ¶ 36, 28 P.3d 697 (noting that a trial court "properly follow[ed] our previous determination that the law disfavors compound interest."); *Christensen v. Munns*, 812 P.2d

69, 71 (Utah Ct. App. 1991) (noting "the general disinclination of the courts to allow compound interest . . . ." (citation and internal quotation marks omitted)). Accordingly, compound interest will be awarded only where "the parties expressly agreed to compound interest." *Mountain States Broadcasting*, 783 P.2d at 555.

¶18    Park's interpretation is based on the text of the Note. He asserts that the Note unambiguously calls for compound interest in the following clause: "principal and interest payable as follows: $5,923.61 due [o]n the 1st day of January 1997, and $5,923.61 on the 1st day of each and every month thereafter until October 31, 2006, at which time the entire principal balance together with interest thereon is paid in full." We do not agree that in this passage "the parties expressly agreed to compound interest." *See Mountain States Broadcasting*, 783 P.2d at 555.

¶19    To begin with, the Note does not employ the term *compound interest*, a settled term of art. Furthermore, it does not describe compound interest. It does not refer to the payment of interest "on both the principal and the previously accumulated interest," *Black's Law Dictionary* 887 (9th ed. 2009); it does not provide "that accrued interest is added periodically to the principal" and that "interest is computed upon the new principal thus formed," *Mountain States Broadcasting*, 783 P.2d at 554; and it does not indicate that "unpaid interest is itself subject to an interest charge." *See McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 578 P.2d 1375, 1379–80 (Cal. 1978) (holding that a provision stating that a "monthly debit balance . . . shall be charged, in accordance with your usual custom with interest" did not "clearly express an understanding that interest would be compounded."). In short, the Note does not expressly call for compound interest.

¶20    Park seeks contextual support for his interpretation in the 20% default interest rate provision. That provision states that if a payment is over five days late, "the entire balance shall bear interest at the rate of 20% until [the] note is brought current." Park's argument is that, by implication, "the entire balance" that

bears interest at 20% must include an interest component; otherwise the Note would have used the term "the balance" or "the principal balance" or "the entire principal balance." The Bradys counter that "[w]hile the phrase 'entire balance' could mean both principal and unpaid accrued interest, the phrase could also reasonably refer simply to the entire principal balance." They observe that the Note's acceleration clause refers to "the entire principal balance and accrued interest," implying that interest accrues without being added to principal. We agree with the Bradys on this point. Had the default interest provision stated that "the entire principal balance and accrued interest shall bear interest at the rate of 20%" we might well agree that it called for compound interest, at least following default. Because it did not, but left the meaning of "entire balance" to inference and implication, the Note falls short of an express agreement for compound interest.[2]

¶21     The Note thus bears simple interest only. This holding moots the question of whether the compounding period is annual or monthly.

## II. Park's Challenge to the Trial Court's Late Fee Ruling Requires Remand

¶22     The trial court refused to enforce the Note's 10% late fee provision on the ground that it constitutes a penalty. The trial court ruled that the 10% late fee "is not a liquidated damage provision" but an unenforceable "penalty." It reasoned that "[t]here is no evidence that the late fee is either a liquidated or actual amount of damage incurred by defendants as a result of plaintiffs' failure to timely make payments, and consequently is disallowed." Park challenges this ruling on appeal.

---

2. This conclusion is reinforced by another argument advanced by the Bradys. They argue that the Note omits a term essential to determining compound interest, namely, the compounding period. *See Nielsen v. Gold's Gym*, 2003 UT 37, ¶¶ 7, 11, 12, 78 P.3d 600. Park does not respond to this argument on appeal.

¶23    Park contends that the trial court erred in two ways: (1) by placing the burden on Park to prove that the provision was enforceable rather than on the Bradys to prove that it was unenforceable, and (2) by concluding that the provision was an unenforceable penalty rather than an enforceable liquidated damages clause. The Bradys respond that the late fee provision was a penalty because it was designed to "act as a spur to performance" rather than to provide a fair estimate of the damages to be suffered as a result of breach. They further argue that, even if the late fee provision was a liquidated damages provision and not a penalty, it was "unenforceable because the amounts due under the provision are grossly disproportionate to the actual damages incurred by Park and would allow Park a double recovery."

¶24    After this case was tried and briefed on appeal, our supreme court recontoured the law of liquidated damages in Utah. *See Commercial Real Estate Inv., LC v. Comcast of Utah II, Inc.*, 2012 UT 49, 285 P.3d 1193. In so doing, it abrogated a number of Utah judicial opinions, including several that the parties brief extensively on appeal. More fundamentally, *Commercial Real Estate* abandons the distinction on which the trial court's ruling rests.

¶25    *Commercial Real Estate* surveys "several competing approaches to evaluating the enforceability of liquidated damages clauses." *Id.* ¶ 20. These include disfavoring penalties, the shock-the-conscience test, the Restatement of Contracts test, and deference to contracting parties. *Id.* ¶¶ 22–32. The supreme court found each of the approaches problematic. *See id.* ¶¶ 33–37. Accordingly, it held that "liquidated damages clauses should be reviewed in the same manner as other contractual provisions." *Id.* ¶ 38. They "are not subject to any form of heightened judicial scrutiny," and "courts should begin with the longstanding presumption that liquidated damages clauses are enforceable." *Id.* ¶ 40. Courts should thus "invalidate liquidated damages clauses only with great reluctance and when the facts clearly demonstrate that it would be unconscionable to decree enforcement of the terms

of the contract." *Id.* ¶ 38 (citation and internal quotation marks omitted). The court noted that unconscionability involves a two-pronged analysis addressing substantive unconscionability and procedural unconscionability. *Id.* ¶ 42. Finally, the court reiterated a point at issue here, that the burden of persuasion lies with the party challenging the enforceability of the clause. *Id.* ¶ 41.

¶26 The foregoing discussion shows that the approach employed by the trial court in the present case is no longer good law in Utah. The trial court here followed the penalty approach, which focuses on whether a liquidated damage clause is in fact a penalty. Although the trial court found the clause to be a penalty, it did not do so in the context of the two-pronged test for unconscionability. And the trial court made this finding only after erroneously concluding that the Note called for compound interest.[3]

¶27 In short, both the legal and factual bases relied on by the trial court when it ruled on this issue were inaccurate. Accordingly, we vacate the trial court's ruling on the enforceability of the 10% late fee provision and remand for a determination of (1) whether the challenged provision is unconscionable under *Commercial Real Estate* as applied to installment payments, (2) if not, which installment payments generated a late fee, (3) whether the late fee provision applies to the balloon payment, and (4) if so, whether that application of the late fee is unconscionable.[4] Finally, on

---

3. It might appear that a 10% late fee is far from unconscionable under any standard. Park claims a late fee of only $592 per late payment. But he also claims that more than sixty payments were late, resulting in over $35,500 in late fees on the monthly payments. He also argues that the balloon payment was late, resulting in another $174,371 in late fees. So in the end, according to Park, a $675,000 note generated some $210,000 in late fees.

4. Whether a late fee provision applies to a balloon payment is

(continued...)

remand, the Bradys, as the parties challenging the provision, bear the burden of demonstrating that the provision is unconscionable.

### III. The Note Does Not Require Payment of Default Interest to Bring It Current

¶28    The Bradys contend that the trial court erred in ruling that "all accrued default interest was required to be paid before the Note could be brought back to 'current' status."[5] The first payment that the Bradys made late was the April 1997 payment. The parties agree that, as a result, the Note was in default for some period of time.

¶29    The Bradys argue that when they paid the combined April and May payment in May 1997, together with the 10% late fee, the Note was "brought current," thus stopping the clock on the accrual of default interest.

---

4. (...continued)

governed by the terms of the note. *See Poseidon Dev., Inc. v. Woodland Lane Estates, LLC*, 62 Cal. Rptr. 3d 59, 63–66 (2007). The secondary question is whether it is enforceable. *See, e.g., In re Market Center East Retail Prop., Inc.*, 433 B.R. 335, 364 (Bankr. D.N.M. 2010) ("A late fee of 5% of a missed monthly payment may be reasonable, but as applied to the balloon it serves as a windfall for the creditor."); *Sterling v. Goodman*, 719 P.2d 1262, 1263 (Nev. 1986) ("Attaching a late payment to a balloon payment is an unreasonable result when it does not appear to have been intended under the contract.").

5. This issue is raised on appeal by the Bradys, who cross-appealed the ruling of the trial court. Although they discuss it in connection with their response to Park's first issue on appeal, Park does not contest that it is properly before us, and we agree that it is.

¶30    Park responds that the Bradys' combined April and May 1997 payment did not bring the Note current, because it did not include thirty-nine days of default interest at the rate of 20%—a whopping $14,420.52, according to Park's accounting expert.[6] By the same calculation, the Bradys' June 1997 payment of $5,923.61, though timely made, should have included a default interest payment of $12,388.65; the Bradys' July 1997 payment, though also timely made, should have included a default interest payment of $10,231.81, and so on throughout the nearly ten-year life of the loan. The Bradys never made these large payments of default interest nor were they given advance notice of Park's belief that they were required to do so. Consequently, in Park's view, the Note was never "brought current."

¶31    The trial court ruled that because the Bradys' combined May 1997 payment did not include default interest, the Note was not brought current and was never brought current by the Bradys thereafter. The question, then, is whether the Note required the Bradys to pay all accrued default interest to bring the Note current.

¶32    The Bradys assert that the Note is ambiguous on this point. "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meaning of terms, missing terms, or other facial deficiencies." *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (citation and internal quotation marks omitted). "[C]ontractual ambiguity can occur in two different contexts: (1) facial ambiguity with regard to the language of the contract and (2) ambiguity with regard to the intent of the contracting parties." *Id.* To determine if a contract is facially ambiguous, "a judge [must] first review relevant and

---

6. Park's expert appears to have read the 20% default interest rate provision not to raise the Note's interest rate from 10% to 20% during the period of default, but to require payment of 20% interest on the entire principal balance—compounded monthly—in addition to the ordinary 10% interest accrued on the Note.

credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity." *Id.* ¶ 31. If a contract is facially ambiguous, extrinsic evidence of the parties' intent is examined. *Id.* ¶ 25. However, "a finding of ambiguity [is justified] only if the competing interpretations are 'reasonably supported by the language of the contract.'" *Id.* (quoting *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995)). "If the extrinsic evidence is not conclusive, then the last resort in contract interpretation is to construe the provision *against* the drafter." *Fire Ins. Exch. v. Oltmanns*, 2012 UT App 230, ¶ 7, 285 P.3d 802; *accord Sears v. Riemersma*, 655 P.2d 1105, 1107 (Utah 1985) ("The well-established rule in Utah is that any uncertainty with respect to construction of a contract should be resolved against the party who had drawn the agreement."); *see also Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*, 795 P.2d 658, 664 (Utah 1990) (applying "construction against the framer" rule to promissory notes).

¶33    We begin with the text of the Note. *See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 19, 215 P.3d 933. Here, the relevant passage consists of the two sentences governing the late fee and default interest:

> If payment is not made within five (5) days of due date, a late fee of 10 per cent will be due. If payment is not made within 5 days of due date the entire balance shall bear interest at the rate of 20% until note is brought current.

Park reads the second quoted sentence to mean that the Note is brought current when all *accrued* interest is paid. The Bradys read the same sentence to mean that the Note is brought current when all *past due* interest is paid. They further contend that, in contrast to the 10% late fee mentioned in the first quoted sentence, the second quoted sentence "provided only that default interest shall accrue but did not provide that it shall be due at any time prior to the

Note's maturity date." In the Bradys' view, the Note was a trap for the unwary, causing them to unwittingly amass interest that, by Park's calculation, would itself yield interest at the rate of 20% compounded monthly for the life of the Note. Park responds that "[w]here the Note has incurred fees and extra interest as a result of default, it is illogical to argue that those excess amounts need not be paid in order to bring the Note current (back to its original state)."

¶34    Turning to extrinsic evidence, Park cites the testimony of his trial expert that an obligation is brought current only "when all interest, either accrued or due, late fees, and any other costs are paid." By this reading, because the Bradys never paid any default interest, the Note was never brought current. The Bradys counter with other testimony given by Park's expert. He later testified that, although the Bradys' initial payment on the Note, made in January 1997, "did not cover the interest owed," the Note was nevertheless not in default, because the payment was timely. In other words, although the payment did not cover all accrued interest, it brought the Note current because it did cover all currently due interest. Neither party cites any case law, statute, dictionary, or authoritative text for their interpretation of the term *brought current*.[7]

---

7. In contrast to his trial argument, Park's appeal does not rely on Utah Code section 57-1-31(1), which provides a method for curing a default under a trust deed. *See* Utah Code Ann. § 57-1-31(1) (LexisNexis 2010) (stating that a borrower may cure its default under a trust deed note by paying "the entire amount then due under the terms of the trust deed (including costs and expenses actually incurred in enforcing the terms of the obligation, or trust deed, and the trustee's and attorney's fees actually incurred) other than that portion of the principal as would not then be due had no default occurred, and thereby cure the existing default.").

¶35 While we do not regard Park's interpretation and the Bradys' interpretation as equally plausible, we nevertheless agree with the Bradys that the text of the Note forecloses neither. Furthermore, extrinsic evidence introduced at trial does not dispel the ambiguity. Accordingly, as a "last resort," we construe the provision against the drafter of the provision. *Fire Ins. Exch.*, 2012 UT App 230, ¶ 7. It is undisputed that the default interest provision was included "at the instructions of Dr. Park." We therefore adopt the Bradys' interpretation of the term *brought current*.

¶36 As a result, default interest, whenever it accrued, was due with the balloon payment and not before. Consequently, payment of the accrued default interest was not required to bring the Note current. We thus hold that the Note was "brought current" with the Bradys' May 1997 payment. Other late payments should be treated the same way: the 20% default interest rate runs from the expiration of the five-day grace period until the payment was made, together with the 10% late fee (if the trial court determines on remand that the 10% late fee is enforceable).

## IV. The Bradys' Challenge to the Default Interest Rate Is Unpreserved

¶37 On cross-appeal, the Bradys contend that the 20% default interest rate is unenforceable because it is "grossly excessive, unconscionable, and would allow a double recovery." Park responds that, because the Bradys "never argued that the Note's default interest rate constitutes an unenforceable penalty, that it is unconscionable, or that it provides a double recovery" at trial, they did not preserve this claim. We agree with Park.

¶38 To be preserved for appeal, an issue "must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (brackets, citation, and internal quotation marks omitted). The preservation requirement is based on the premise

that, "in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (citation and internal quotation marks omitted). Merely mentioning an issue does not preserve it; the issue must be specifically raised, with relevant legal authority, in a manner that alerts the court to the need to correct the error. *See State v. Cruz*, 2005 UT 45, ¶ 33, 122 P.3d 543.

¶39    Here, the Bradys cite various points in the record where they asserted that the Note's terms were "unconscionable," "unfair," "excessive," and "unreasonable and unjustified." However, nowhere did the Bradys alert the court to the claim that the 20% default interest rate in particular was unenforceable as a penalty or otherwise unconscionable. This explains why the trial court ruled that the 10% late fee was an unenforceable penalty but made no ruling one way or the other concerning the 20% default interest rate.

¶40    Anticipating this vulnerability, the Bradys contend that, in any event, the trial court's failure to rule on the enforceability of the default interest provision constituted plain error. To prove plain error, an appellant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶41    We do not agree that any error here was obvious. The Bradys challenge a provision in the Note calling for default interest of 20%. But we have previously held that a 30% default interest rate was not unconscionable. *See The Cantamar, LLC, v. Champagne*, 2006 UT App 321, ¶¶ 34–37, 142 P.3d 140. Although the Bradys ably argue the points on which the present case is distinguishable from *Cantamar*, we cannot agree, in light of *Cantamar*, that "the trial court erred by failing to sua sponte" invalidate the default interest rate as unenforceable. *See State v. Alfatlawi*, 2006 UT App 511, ¶ 31, 153 P.3d 804.

¶42    Because this claim was not preserved at trial and any error was not obvious, the claim is denied.

V. The Bradys' Purported Evidence of Tender Was Reasonably Excluded

¶43    On cross-appeal the Bradys further contend that the trial court abused its discretion in excluding on relevance grounds a fax from Bank One to Park, dated June 20, 2000 (the Bank One Fax), and "other similar documents." In the Bank One Fax, a bank officer asked Park to calculate a payoff amount that would enable the bank to pursue a refinance of the Note. These documents, the Bradys insist, "would have established that the Bradys tendered payment as of June 20, 2000," thus halting the accrual of all interest and penalties as of that date.

¶44    Evidence is relevant if it has any tendency to make a fact of consequence to determining the action more or less probable than it would be without the evidence. Utah R. Evid. 401. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194.

¶45    The Bradys contend that the Bank One Fax "clearly establishes" that the Bradys tendered payment of the Note by June 20, 2000. A review of the doctrine of tender is thus in order. "An offer in writing to pay a particular sum of money . . . is, if not accepted, equivalent to the actual production and tender of the money . . . ." Utah Code Ann. § 78B-5-802(1) (LexisNexis 2012). "In order to be valid, tender of payment on a contract must be (1) timely, (2) made to the person entitled to payment, (3) unconditional, (4) an offer to pay the amount of money due, and (5) coupled with an actual production of the money or its equivalent." *PDQ Lube Ctr., Inc. v. Huber*, 949 P.2d 792, 800 (Utah Ct. App. 1997) (citations and internal quotation marks omitted). The proponent of a tender thus bears the burden of showing that

the excluded documents constituted "a bona fide, unconditional, offer of payment of the amount of money due coupled with an actual production of the money or its equivalent." *See Jenkins v. Equipment Ctr., Inc.*, 869 P.2d 1000, 1003 (Utah Ct. App. 1994); *see also Hyams v. Bamberger*, 36 P. 202, 204 (Utah 1894) ("[T]ender of the debt . . . will . . . protect the [obligor] from cost, and stop interest.").

¶46    Here, the Bank One Fax reads more like an inquiry than an unconditional offer:

> Yesterday, I sent you a payoff figure for amounts owing you that I had calculated based on the information that had been provided to me by the Bradys. You had indicated that this was not a correct payoff balance. I have been in contact with Associated Title Company here in Salt Lake to schedule a closing for this transaction. I would appreciate it if you could provide me with pay off figures for the two notes the Bradys currently have with you, as I would like to schedule a closing some time this week.
>
>  . . . .
>
> Additionally, there is a "Notice of Interest" appearing on the Brady property, filed by "M. Morrison", which I understand is your spouse. Will she be available to sign a release of her interest at the time of closing? Please advise.

The Bank One Fax falls well short of "a bona fide, unconditional, offer of payment of the amount of money due coupled with an actual production of the money or its equivalent." *See Jenkins*, 869 P.2d at 1003. On the contrary, it suggests not that the Bradys had offered to pay the amount of money due, but that they were still attempting to ascertain what amount was due. Accordingly, we are

not persuaded that the Bank One Fax necessarily makes the existence of a tender more probable than it would be without the evidence. We thus conclude that the trial court did not abuse its discretion in excluding the Bank One Fax.[8]

## VI. The Bradys Have Not Demonstrated Error in the Dismissal of Their Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

¶47    Finally, the Bradys contend that the trial court erred by granting in part Park's mid-trial motion to dismiss the Bradys' claim for breach of the implied covenant of good faith and fair dealing.

¶48    In a bench trial, after the plaintiff has completed the presentation of his evidence, the defendant "may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Utah R. Civ. P. 41(b). "In reviewing a trial court's dismissal under rule 41(b), this court defers to the trial court's findings of fact 'and will not overturn its findings if they are adequately supported by the evidence.'" *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 13, 20 P.3d 388 (quoting *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 252 (Utah 1985)). "However, the determination of whether a party has made out a prima facie case is a question of law which we review for correctness, affording no deference to the trial court's judgment." *Id.* (citing *Wessel*, 711 P.2d at 253). "A prima facie case has been made when evidence has

---

8. Because the Bradys do not separately argue the admissibility of the "other similar documents," we do not separately address them. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[T]his [c]ourt need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").

been received at trial that, in the absence of contrary evidence, would entitle the party having the burden of proof to judgment as a matter of law." *Id.* ¶ 14 (citing *State v. Wood*, 268 P.2d 998, 1001 (Utah 1954)).

¶49    "An implied covenant of good faith and fair dealing inheres in every contract." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. The covenant implies "as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 8, 266 P.3d 814. Although the scope of the covenant is limited, it encompasses "an implied duty that contracting parties refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *Id.* ¶¶ 9, 16 (citations and internal quotation marks omitted). Thus, the covenant "'prevent[s] either party from impeding the other's performance of his obligations [under the contract].'" *Markham v. Bradley*, 2007 UT App 379, ¶ 18, 173 P.3d 865 (second alteration in original) (quoting *Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1321 (Utah 1975)).

¶50    Here, the Bradys contend that the trial court improperly dismissed claims of breach alleging that Park "engaged in conduct which rendered it difficult or impossible for the Bradys to continue performance and then took advantage of the non-performance he has caused." The Bradys cite the fact that they "presented evidence to show that, in June 2000, they requested the pay-off amount on the Note to refinance the debt through Bank One," but that Park "refused to provide his own pay-off amount as requested." As a result, they contend, they were unable to refinance the Note and fulfill their obligations under the Note.

¶51    However, at trial, the Bradys did not rely on evidence of Park's inaction in June 2000. After Park moved to dismiss, the trial court asked the Bradys, "In terms of the breach of the implied

covenant of good faith and fair dealing, what is the evidence that's in front of me to consider?" In response, the Bradys cataloged the evidence that they were relying on to defeat Park's motion: the language of the Note that Park later claimed called for compound interest; the fact that "right from the get-go, this note was set up and established to fail"; the fact that Park later "insisted that compound interest be paid"; the fact that in "*2005*, when the Bradys requested, multiple times, that they get some kind of a pay off, he didn't respond"; and the fact that, in "*2006*, he finally responded 12 days before the property was to go into default because of payment of the note, then made a demand for two and a half million dollars, knowing that the Bradys couldn't pay." (Emphases added.)

¶52 As noted above, to be preserved for appeal, a claim "must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (brackets, citation, and internal quotation marks omitted). Here, when asked by the trial court what evidence supported their cause of action for breach of the implied covenant of good faith and fair dealing, the Bradys cited Park's actions in 2005 and 2006, not his inaction in 2000 that they point to on appeal. We conclude that by not putting the trial court on notice of the evidence they now claim it should have considered at trial, the Bradys failed to preserve the claim for appeal.

¶53 The Bradys also argue that their cause of action for breach of the implied covenant of good faith and fair dealing was supported by evidence "that each untimely pay-off figure provided by Park was substantially higher than the amount ultimately determined to be due." "By overstating the amount due," the Bradys maintain, Park "rendered it impossible for the Bradys to fulfill their obligations under the Note."

¶54 In rejecting this argument, the trial court made reference to the fact that the Bradys had not proven that Park acted in bad faith.

It ruled that Park's "handling of the protracted discussions concerning the amount which was due under the notes would be a breach of the implied covenant if the evidence was convincing that such was done in bad faith or for the purpose of obtaining some unfair advantage or amount to be paid." The court then explained that it was distinguishing "between 'negotiations' for the purpose of compromising the amount due and taking a position on the issue which is unreasonable and unjustified." It then concluded that it could not "find to a preponderance from the testimony or the documentary evidence . . . that the implied covenant has been breached. Consequently, there is no cause of action."

¶55 The Bradys contend on appeal that "the trial court's conclusion that a finding of a breach of the covenant of good faith and fair dealing requires a finding [of] bad faith or an intent to obtain an unfair advantage is contrary to Utah law." They rely on *Canyon Country Store v. Bracey*, 781 P.2d 414 (Utah 1989) where the supreme court stated that "[n]otwithstanding the name given the covenant, breach of the covenant of good faith and fair dealing is an objective question. As is true of virtually all other contractual breaches, the intention of the breaching party is immaterial." *Id.* at 421 n.6.

¶56 We are not persuaded that the trial court's ruling offends this principle. While the trial court's use of the term *bad faith* in this context may have been imprecise—though understandable considering that the covenant's name includes the words *good faith*—the trial court clarified its meaning by stating that it was unable to find by a preponderance of the evidence that Park's position with respect to the payoff amounts was "unreasonable and unjustified." "Generally, whether a party to a contract has acted reasonably 'is an objective question to be determined without considering the [party's] subjective state of mind.'" *Markham v. Bradley*, 2007 UT App 379, ¶ 18, 173 P.3d 865 (quoting *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 n. 2 (Utah 1996) (considering whether an insurer acted in bad faith)). Accordingly,

we believe that, read in context, the trial court's ruling judged Park's actions against an objective standard of reasonableness.

¶57    In sum, the Bradys have not established on appeal that the court erred either in its factual findings or legal rulings in granting in part Park's motion to dismiss the Bradys' claim for breach of the implied covenant of good faith and fair dealing.

CONCLUSION

¶58    We reverse the trial court's ruling on the issue of compound interest and hold that because the Note did not expressly provide for compound interest, it bore simple interest only. We also vacate the trial court's ruling that the 10% late fee provision was unenforceable, because that ruling was premised on now superseded law. Furthermore, because the 20% default interest provision is ambiguous even in light of extrinsic evidence, it must be construed against the drafter, Park. Consequently, default interest accrued between the expiration of each installment's five-day grace period and the date that installment was paid, but fell due with the balloon payment; thus, payment of default interest was not required to bring the Note current before the date of the balloon payment. The amount due on the Note must therefore be recalculated. We remand for a determination on the enforceability of the 10% late fee provision and for a recalculation of the amount due under the 20% default interest provision.

¶59    The Bradys' challenge to the validity of the 20% default interest provision is unpreserved and therefore not properly before us. Finally, the Bradys have not demonstrated that the trial court abused its discretion in excluding the Bank One Fax or erred in dismissing their claim for breach of the implied covenant of good faith and fair dealing. We affirm the trial court on these issues.

¶60     In sum, we affirm in part, reverse in part, and remand for the trial court to recalculate the amount owing on the Note consistent with this opinion and its ruling on the late fee issue.

————