2016 UT App 61

## THE UTAH COURT OF APPEALS

MARIE SCHREIB,
Appellant,

*v.*

JOEL WHITMER,
Appellee.

Memorandum Decision
No. 20140209-CA
Filed March 31, 2016

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 110916584

Edward T. Wells, Attorney for Appellant

H. Justin Hitt, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGE KATE A. TOOMEY and SENIOR JUDGE
PAMELA T. GREENWOOD concurred.[1]

CHRISTIANSEN, Judge:

¶1 Marie Schreib appeals from a jury verdict in favor of Joel
Whitmer. We affirm.

¶2 This case arises from a July 11, 2008 automobile accident,
in which Whitmer rear-ended Schreib as she was entering a

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

library parking lot.[2] In August 2011, Schreib filed a complaint against Whitmer alleging that he negligently caused the accident and that Schreib sustained personal injuries as a result.

¶3    The parties initially arbitrated the case, and a panel of three arbitrators issued an award in favor of Schreib. Whitmer then filed a notice of appeal in the district court and requested a jury trial. At a pretrial conference, the trial judge set the case for a two-day jury trial and ordered the parties to file any motions in limine by October 21, 2013.

¶4    On October 21, 2013, Schreib filed a motion in limine seeking to exclude post-accident photographs of Schreib's and Whitmer's vehicles. While Schreib acknowledged that the photographs might be "marginally" relevant, she argued that their admission into evidence would risk misleading the jury and cause unfair prejudice to her. On October 30, 2013, Schreib filed a second motion in limine seeking to exclude evidence of her preexisting medical conditions and prior automobile accidents. Schreib argued that the evidence was not relevant and should be excluded because Whitmer had not designated an expert "who [could] provide testimony that any preexisting condition, of which might be adduced by [Whitmer], contributed in any way to [Schreib's] present condition and/or the injuries received in the collision at issue."

¶5    The trial court denied both motions. The trial court concluded that the photographs were relevant evidence and that the probative value of the photographs was not "substantially outweighed by the danger of prejudice, confusion or misleading

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 3, 82 P.3d 1064 (citation and internal quotation marks omitted).

the jury." Regarding Schreib's second motion, the court concluded that "evidence of preexisting injuries and prior accidents [is] relevant." The court explained that "[w]hether [Whitmer] can get the evidence admitted is another matter, but the Court determines it can[not] exclude[] such evidence at this time on the basis of lack of relevance." The trial court also ruled that Schreib's second motion was untimely.

¶6     At trial, the parties presented conflicting evidence as to whether Schreib's injuries arose from the 2008 accident or from her preexisting medical conditions and prior accidents. Schreib testified that the impact from the collision was "quite a jar." She testified that after the collision, she got out of her vehicle, exchanged information with Whitmer, and told him that she was experiencing back pain. After Whitmer left, Schreib went to the library and called the police to report the accident. When she was done talking to the police, Schreib finished her business at the library and drove herself home. Three days after the accident, Schreib visited a chiropractor, Dr. Peterson, and complained that she was experiencing "pain in her neck and shoulders, headaches, low back pain and minor groin pain." Schreib further testified that before the accident she was in good physical health, that she was treated by Dr. Peterson from three days after the accident until February 2009, and that under his care she had a ninety-percent improvement. Subsequently, Schreib sought additional chiropractic care from a second chiropractor, Dr. Stockwell.

¶7     Both chiropractors testified for Schreib at trial. Dr. Peterson testified that he treated Schreib for soft-tissue neck and back injuries from July 14, 2008 through February 2, 2009. He further testified about the relationship between whiplash and low-speed collisions and that "the amount of damage [to the vehicles] has no bearing upon the likelihood of injury in a collision." In addition, based upon his examination of Schreib, he opined that she was injured in the accident. He also testified that

he had examined Schreib in December 2007 and that she had complained of "insidious" neck pain that had persisted for two to three weeks.[3] On cross-examination, Dr. Peterson admitted that he was not Schreib's primary treating doctor and that another doctor in his office provided Schreib's "day-to-day" treatment.

¶8     Dr. Stockwell testified that Schreib had been his patient since April 1999, that he had treated her thirty-two times between 1999 and Schreib's first post-accident visit in August 2008, and that she had originally sought treatment by him for neck pain. He also opined that Schreib was injured in the accident. However, on cross-examination, he testified that Schreib did not mention the accident to him during her first post-accident visit on August 21, 2008.

¶9     By contrast, Whitmer testified that he was driving "very slow" when he "bumped" Schreib's vehicle. According to Whitmer, he did not observe any vehicle damage while the parties were exchanging information, and Schreib did not complain of any pain or request medical assistance. Whitmer further testified that he was not injured in the accident and that afterward he went straight to his high school to play in a baseball game.

¶10     After the parties rested, Schreib moved for a directed verdict on the issue of liability, which Whitmer did not oppose. Accordingly, the court granted Schreib's motion, observing that Whitmer had "accepted liability for the accident." Schreib then moved for a directed verdict on the issue of causation, arguing that the jury could not reasonably find that the accident was not

---

3. Dr. Peterson testified that when he used the term "insidious," he meant that Schreib was not sure what caused the pain in her neck.

the cause of her injuries. The trial court summarily denied Schreib's motion.

¶11    After deliberation, the jury returned a verdict that the accident was not the legal cause of Schreib's alleged injuries. Based on the jury's finding, the trial court entered judgment for Whitmer and dismissed Schreib's claims. Thereafter, Schreib filed motions for a judgment notwithstanding the verdict and for a new trial on the issue of damages. After a hearing, the trial court denied both motions. Schreib appeals.

### I.    Schreib's Preexisting Medical Conditions

¶12    First, Schreib contends that "[t]he trial court applied the wrong legal standard when it denied [her] motion in limine regarding evidence of pre-existing medical conditions."

¶13    In denying Schreib's motion, the trial court ruled that "evidence of preexisting injuries and prior accidents [is] relevant." The court observed that "[w]hether [Whitmer] can get the evidence admitted is another matter, but the Court determines it can[not] exclude[] such evidence at this time on the basis of lack of relevance." The court further explained that because the evidence was relevant, "any ruling at this time to exclude would be premature and the Court must wait until [Whitmer] actually attempts to introduce evidence at trial before it rules on its admissibility."

¶14    Schreib asserts that "[i]t is clear" from *Harris v. ShopKo Stores, Inc.*, 2013 UT 34, 308 P.3d 449, that "absent expert medical testimony to establish that pre-existing medical conditions are connected in some way to the pathology of which the plaintiff is complaining in an injury case, evidence of pre-existing conditions is not relevant and should not be admitted." Thus, according to Schreib, the trial court failed to correctly apply the law.

¶15 "[W]e consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness." *Meguerditchian v. Smith*, 2012 UT App 176, ¶ 9, 284 P.3d 658 (alteration in original) (citation and internal quotation marks omitted). In addition, "'[a] trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion.'" *Brady v. Park*, 2013 UT App 97, ¶ 44, 302 P.3d 1220 (quoting *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194).

¶16 We conclude that Schreib's reliance on *ShopKo* is misplaced. In *ShopKo*, the Utah Supreme Court addressed whether the trial court erred in giving an apportionment instruction to the jury. *ShopKo*, 2013 UT 34, ¶ 31. The *ShopKo* plaintiff was injured when she sat on a display office chair in a ShopKo store and the chair collapsed. *Id.* ¶ 1. At trial, evidence was introduced to support the "inference that [the plaintiff] had previously suffered injuries in car accidents and that she had a number of preexisting conditions at the time of her fall." *Id.* ¶ 35. "The trial court instructed the jury that, if it could, it should apportion damages between those attributable to ShopKo's negligence and those attributable to her preexisting conditions." *Id.* ¶ 1. However, while there was expert testimony submitted to the jury at trial suggesting a connection between the plaintiff's preexisting conditions and her pain, there was "no expert testimony in the record on the *extent* to which her conditions contributed to her pain, if at all." *Id.* ¶ 37. The supreme court noted that "[w]ithout such testimony, the jury would have had to speculate as to any basis for apportioned damages, especially in light of [the plaintiff's] expert testimony indicating that her fall at ShopKo caused her injury." *Id.* Consequently, the supreme court concluded that there was insufficient evidence to support the trial court's apportionment instruction. *Id.*

¶17    Although the *ShopKo* court observed that evidence of preexisting conditions must overcome the standard evidentiary hurdles in order to be admissible, *see id.* ¶ 29 (citing Utah R. Evid. 401–403), the court rendered no holding as to whether the evidence of the plaintiff's prior car accidents and preexisting conditions was admissible at trial. Rather, the issue in *ShopKo* was whether there was sufficient evidence to support giving an apportionment instruction to the jury.[4] *Id.* ¶ 31. Therefore, Schreib's reliance on the apportionment language from *ShopKo* to support her admissibility argument is misplaced, and we conclude that the trial court did not err under *ShopKo*.

¶18    We next consider whether the trial court abused its discretion in determining that Schreib's preexisting medical conditions and prior accidents were relevant. *See Brady*, 2013 UT App 97, ¶ 44. "Evidence of preexisting conditions must be relevant to the pain or injury at issue and must also overcome other pertinent evidentiary hurdles in order to be admissible." *ShopKo*, 2013 UT 34, ¶ 29 (citing Utah R. Evid. 401–403). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Utah R. Evid. 401. Generally, relevant evidence is admissible, and irrelevant evidence is inadmissible. *Id.* R. 402. However, even relevant evidence is not admissible if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* R. 403.

¶19    Whitmer correctly observes that "[t]he only evidence offered at trial regarding Schreib's preexisting medical

---

4. In this case, neither party requested an apportionment instruction, and the trial court did not instruct the jury on apportionment.

conditions and prior accidents was testimony elicited from Schreib and her treating chiropractors." Schreib concedes this point but asserts that she only introduced the evidence "to avoid having [Whitmer] put it on in his case, thus making it appear [Schreib] was hiding something."[5] Schreib maintains that "[t]he evidence came in only because the court denied [her] motion in limine." We disagree with Schreib.

¶20 Relevance and admissibility are separate concepts. Namely, the relevance of evidence must be determined before considering whether or not evidence is admissible. *See* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 152 (2015) ("Rule 401 determines the minimal qualifications that every item of evidence proffered must possess to be admissible."). And even if relevant, evidence must also be admissible under rule 403.[6] *See* Utah R. Evid. 403. Here, the trial court's ruling on Schreib's motion in limine did not necessarily render her preexisting medical conditions and prior accidents admissible at trial. In denying Schreib's motion, the trial court concluded that "evidence of preexisting injuries and prior

---

5. We do not consider Schreib's introduction of this evidence at trial to be invited error. *See Lawrence v. MountainStar Healthcare*, 2014 UT App 40, ¶ 53, 320 P.3d 1037 (concluding that the appellant's "attempt to mitigate any harm from the trial court's adverse ruling by introducing the evidence, asking her witnesses about it, and stipulating to the precise language the jury would hear did not amount to a waiver or an invited error"). After all, if Schreib had not introduced the evidence, there is little doubt that Whitmer would have sought the admission of the evidence.

6. Schreib has neither argued nor demonstrated how the relevance of this evidence was "substantially outweighed" by the danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Utah R. Evid. 403.

accidents [is] relevant." And the court specifically reserved its admissibility determination for trial, noting that pretrial exclusion of the evidence would be premature and that the determination of admissibility needed to wait until one of the parties attempted to introduce the evidence at trial. Therefore, contrary to Schreib's assertion, the trial court did not "allow[] evidence of prior injuries and unrelated pre-existing medical treatment to come in at trial" when it denied her motion in limine on relevancy grounds alone.

¶21    Turning to the trial court's relevancy determination, one of the primary issues in this case was whether Schreib's injuries resulted from the car accident with Whitmer or from her preexisting medical conditions and prior accidents. In her motion in limine, Schreib asserted that she was asymptomatic prior to the collision and that her injuries were solely the result of the car accident with Whitmer. In his opposition, Whitmer observed that Schreib "has a history of prior treatment by treating chiropractor, [Dr.] Peterson, for insidious onset of neck pain of . . . two to three weeks' duration in 2007, as well as chiropractic care from 1999–2008 with treating chiropractor, [Dr.] Stockwell." Whitmer also noted that Schreib's "history includes a prior motor vehicle accident in 1984, a prior work injury, a fall on ice in 2005 and a subsequent automobile accident in 2011." Consequently, evidence of Schreib's preexisting medical conditions and prior accidents was relevant to the jury's determination in this case because the evidence had a tendency to disprove Schreib's contention that the automobile accident was the sole cause of her injuries and the resulting medical care costs. Because the evidence was relevant, and because Schreib bases her entire argument on *ShopKo*, which we have determined is not applicable to this case, we affirm the trial court's denial of Schreib's motion in limine regarding her preexisting medical conditions.

II. Photographs of the Parties' Vehicles

¶22 Second, Schreib contends that the trial court abused its discretion when it "denied [Schreib's] motion in limine asking the court to exclude photographs" and when it "allowed [Whitmer], over objection[,] to use exhibits consisting of photographs of damage to the vehicles involved in the collision." In denying Schreib's motion in limine regarding the photographs, the trial court concluded that the photographs were relevant evidence and that they did not violate rule 403 of the Utah Rules of Evidence.

¶23 "The trial court is afforded broad discretion to admit or exclude evidence, and we 'will disturb its ruling only for abuse of discretion.'" *Lawrence v. MountainStar Healthcare*, 2014 UT App 40, ¶ 16, 320 P.3d 1037 (quoting *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269). Accordingly, "we will not reverse a trial court's ruling on evidence unless the ruling is beyond the limits of reasonability." *Daines*, 2008 UT 51, ¶ 21 (citation and internal quotation marks omitted).

¶24 We conclude that the trial court did not abuse its discretion in ruling that the photographs were relevant. In most cases, there is a relationship between the severity of an accident and the resultant injury. *See, e.g.*, *Robinson v. All-Star Delivery, Inc.*, 1999 UT 109, ¶ 27, 992 P.2d 969 ("All things being equal, the severity of an accident often correlates with the extent of damages." (footnote omitted)). Here, the photographs introduced at trial depict very little visible damage to either party's vehicle. Certainly, photographs depicting such minimal damage to the vehicles are relevant when determining the force of the impact during the collision, and thus whether the collision caused the alleged injuries. And while the minimal damage to the parties' vehicles did not directly disprove that Schreib's injuries resulted from the accident, it did have a "tendency to

make [that] fact . . . less probable than it would be without the evidence." *See* Utah R. Evid. 401.

¶25   In addition, the trial court did not abuse its discretion in ruling that the photographs were not unfairly prejudicial. *See id.* R. 403. In this case, photographic evidence showing that both vehicles suffered minimal damage is probative of the force with which the accident occurred and the likelihood that it caused physical harm to Schreib. While the photographs may have been prejudicial in the sense that "almost all [relevant] evidence is," the photographs were not *unfairly* prejudicial. *See Robinson*, 1999 UT 109, ¶ 28 ("There is little reason to offer evidence if it does not cast doubt on or prejudice the opposing party's position."). Indeed, the prejudicial effect of the photographs was no greater than other unobjected-to evidence that tended to show the minor nature of the collision, such as Schreib's testimony that she had someone use a "plunger" to "pull out any little dent that was there" and Whitmer's testimony that there was no damage to his vehicle and that no repairs were done.

¶26   Schreib further argues that Whitmer improperly used the photographs "as a basis for inviting the jury to speculate on whether or not it was possible for [Schreib] to have been injured in the collision." According to Schreib, "[w]hether there was sufficient force generated in the collision to cause an injury to Schreib calls for expert testimony and is beyond the knowledge of the common juror." Thus, Schreib contends, the trial court's admission of the photographs provided an invitation to the jury to speculate as to "whether there were sufficient forces generated in the collision to have caused injury to [Schreib]."

¶27   We are not persuaded that the fundamental relationship between the force of impact in an automobile accident and the existence or extent of any resulting injuries necessarily requires expert testimony, or that such determinations are outside the general knowledge or common sense experience of jurors. But in

any event, Schreib had sufficient opportunity to argue, and she did in fact present testimony suggesting, that injuries can result from low-speed collisions. For example, Dr. Peterson, who had training in the physiology of whiplash injuries, testified that there are a number of factors that make whiplash injury more likely in a low-speed collision, including age, gender, stature, and the position of the head at impact. He also testified that based on his training and experience it was not possible to determine the likelihood of a whiplash injury solely from the amount of damage done to a vehicle in an accident. Although Whitmer did not present opposing expert testimony, the fact that the jurors evidently did not give as much weight to Dr. Peterson's testimony as Schreib would have liked does not mean the jurors resorted to speculation in finding that the accident was not the cause of Schreib's injuries. *See Lyon v. Bryan*, 2011 UT App 256, ¶ 10, 262 P.3d 1199 ("A jury is not required to believe an expert witness even when that expert's opinion is unchallenged by the opinion of an opposing expert."). Moreover, while expert testimony may appropriately address the weight to be given to photographs of automobile accidents, such testimony does not relate to their admissibility. Consequently, we conclude that the trial court did not abuse its discretion in admitting the photographs.[7]

## III. Sufficiency of the Evidence

¶28    Finally, Schreib contends that the trial court abused its discretion when it denied her motion for a directed verdict "on causation of [her] injuries" and when it denied her rule 50(b)

---

7. Schreib also cites *Harris v. ShopKo Stores, Inc.*, 2013 UT 34, 308 P.3d 449, in this section of her brief. However, for the reasons previously stated, *see supra* ¶ 17, and particularly because *ShopKo* does not address the relevance or admissibility of photographs, we do not address this argument further.

motion for a judgment notwithstanding the verdict and for a new trial limited to the issue of damages. According to Schreib, Whitmer "offered no evidence that would support a finding that [Schreib] was not injured in the collision."[8]

> When a party challenges a trial court's denial of a motion for directed verdict or judgment notwithstanding the verdict on the basis of insufficiency of the evidence, we follow one standard of review: We reverse only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict.

*Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557 (citation and internal quotation marks omitted); *see also Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988) (observing that there is one standard of review for "an insufficiency-of-the-evidence based challenge" to a denial of either a motion for a judgment notwithstanding the verdict or a new trial and that "we reverse only if, viewing the evidence in the light most favorable to the party who prevailed, we conclude that the evidence is insufficient to support the verdict"). Because Schreib's challenge to the denial of her motions attacks the sufficiency of the evidence, she should "marshal all the evidence supporting the verdict and then show that the evidence cannot

---

8. In denying Schreib's motion for judgment notwithstanding the verdict, the trial court observed that "[Whitmer] does not have to prove [Schreib] was not injured since it is [Schreib's] burden of proof." We agree with the trial court that Whitmer did not have the burden to prove that Schreib was not injured in the 2008 accident; rather, Schreib, as the plaintiff, had the burden to prove that she *was* injured in the accident.

support the verdict."[9] *Hansen*, 761 P.2d at 17–18 (citation and internal quotation marks omitted); *see also DeBry v. Cascade Enters.*, 879 P.2d 1353, 1359–60 (Utah 1994) ("For the Court to rule that the [plaintiffs] were entitled to a judgment n.o.v. in the amount of all the damages they claim, the [plaintiffs] must not only marshal all evidence that supports the verdict; they must also demonstrate that reasonable persons could not have concluded as the jury did *and* that they were entitled to the full amount of the damages claimed *as a matter of law* and not just damages in some amount.").

¶29 Applying the foregoing standard to the present case, we conclude that Schreib has not made the necessary showing. To begin with, Schreib has not marshaled the evidence supporting the jury's verdict; rather, she simply refers to her own evidence and cites only those facts that support her position. In any event, Schreib has not demonstrated that the evidence was insufficient to support the jury's verdict that the accident was not the legal cause of Schreib's alleged injuries. Although there was conflicting evidence in this case, there was evidence that Schreib had previously been treated for similar or identical claims of pain and symptoms by both chiropractors within a few months before her accident with Whitmer; that the accident resulted in little or no damage to the parties' vehicles; that Schreib did not request any medical assistance at the scene of the accident; and

---

9. In *State v. Nielsen*, 2014 UT 10, 326 P.3d 645, the Utah Supreme Court "repudiate[d] the default notion of marshaling" and "reaffirm[ed] the traditional principle of marshaling as a natural extension of an appellant's burden of persuasion." *Id.* ¶ 41. While clarifying that the focus on appeal should be on the merits of a case, the supreme court reiterated that "a party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal." *Id.* ¶ 42.

that Schreib drove her car from the scene of the accident without receiving any medical attention. On the record before us, we are unable to conclude that the evidence was "so slight and insubstantial" that it cannot support the jury's verdict. *See Hansen*, 761 P.2d at 18.

¶30 Moreover, Schreib's argument that the jury was required to accept the testimony of her chiropractors regarding causation because Whitmer did not present opposing expert testimony is without merit. As previously discussed, the jury was not required to believe Schreib's chiropractors' testimony on causation. *See Lyon*, 2011 UT App 256, ¶ 10. "A jury's latitude to weigh the credibility of witnesses is extraordinarily broad," and "[w]hen it assesses expert testimony, a jury's latitude is even broader." *Id.* Indeed, "[a] jury is not required to believe an expert witness even when that expert's opinion is unchallenged by the opinion of an opposing expert." *Id.* Therefore, the fact that Whitmer did not present opposing expert testimony is of no consequence, as the jury was not required to simply accept Schreib's chiropractors' testimony that the automobile accident was the cause of her injuries. The jury was free to accept or disregard the chiropractors' testimony, and the fact that the jury evidently did not credit the chiropractors' testimony is not grounds for overturning the jury's verdict. Accordingly, the trial court did not err in denying Schreib's motions for directed verdict and judgment notwithstanding the verdict.

¶31 Schreib also contends that the trial court erred in denying her motion for a new trial on the issue of damages. "The trial court's denial of a motion for a new trial will be reversed only if the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Mann v. Fredrickson*, 2006 UT App 475, ¶ 8, 153 P.3d 768 (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 59(a)(6) (stating that a new trial may be granted if the evidence is insufficient to justify the verdict).

Because Schreib has failed to demonstrate that the evidence was insufficient to support the jury's verdict, we conclude that the trial court did not err when it denied Schreib's motion for a new trial on the issue of damages.

¶32    Affirmed.

_____