321 P.2d 221

**EPHRAIM THEATRE COMPANY, a corporation, Plaintiff and Respondent,**

v.

**Hal F. HAWK, The Heirs of Claude Hawk, and Claude Hawk Theatre Corporation, Defendants and Appellants.**

No. 8606.

Supreme Court of Utah.

Feb. 10, 1958.

3. As to court's discretion to dismiss for defective pleadings see 2 Moore's Federal Practice, 2d Ed. p. 2307.

Skeen & Skeen, Salt Lake City, for appellants.

Merrill L. Hermansen, Ephraim, for respondent.

CROCKETT, Justice.

Defendants seek reversal of a judgment for rental of plaintiff's theater building at $125 per month for a period of 10 months. Their attack on the judgment is grounded on their contention that any obligation to pay rent was contingent, to be paid only out of income from the theater as provided in the terms of a written contract; whereas the trial court held the requirement for the payment of rent as unconditional, which holding we reverse.

Plaintiff corporation owned the Ephraim Theatre in Ephraim, Utah. On April 30, 1946, the parties entered into a contract for a joint venture whereby the defendants, who are experienced theater operators, were to manage and operate the theater and the plaintiff was to furnish the building. The parties recognized the necessity of refurnishing and equipping the theater for the purpose indicated which they contemplated would require about $6,500; each agreed to and did contribute $3,250 to a common fund for that purpose to be spent under plaintiff's supervision upon its building. The difficulty in this case stems from the fact that the plaintiff, instead of limiting itself to the terms of the contract, went beyond and spent in excess of $13,000 additional to refurbish and renovate its building.

The theater business was not as good as the parties anticipated and did not produce what plaintiff expected to realize on its investment. It now contends that the terms of the contract, if applied in accordance with defendants' view, are so unjust and inequitable that the only reasonable construction to be placed upon it is that the parties intended the defendants to have a firm obligation to pay a fixed monthly rental; whereas the defendants rely upon its literal terms which, they aver, plainly indicate that the only rental payable to the plaintiff was to come out of proceeds from the business after operating expenses had been met.

Before discussing the divergent views of the parties with respect to the terms of the contract, we digress to point out that the plaintiff makes no contention that there was any abandonment of the old contract, nor any modification or change therein; nor that any new one, either oral or written, was entered into. No such issue was presented either by pleading, evidence or finding.

The theory of the plaintiff's case on the trial below and on this appeal is that the contract is uncertain in its terms and therefore is subject to explanation by the subsequent conduct of the parties.

The pertinent terms of the contract are:

"4. The parties of the second part [defendants] shall receive and hold the proceeds from the conduct of the said business and dispose of the same as follows, to-wit:

"(a) Pay all expenses incurred in connection with the operation of the said theatre business * * *

"(b) Pay to the parties of the first part [plaintiff] as rental for the said Ephraim Theatre Building, the sum of $100 monthly until * * * [two small front office rooms were taken over, which was done] * * * and after * * * there shall be paid to the party of the first part * * * [plaintiff] * * * the sum of $125.-00 monthly as rental for the said entire building.

"(c) Divide the residue of the monthly income from the operation of the said theatre building, one-half to the party of the first part, and one-half to the parties of the second part."

The above provision is the only reference to rent. Nevertheless, the plaintiffs argue that the conduct of the parties in connection with the joint enterprise, including their expenditures greatly in excess of the requirements of the contract, which were obviously to the mutual advantage of the parties, and the fact that one time when rent was three months in arrears, the defendants upon demand paid it at the rate of $125 per month, demonstrates that there was uncertainty and/or ambiguity in the contract in that it did not reflect the intent of the parties, thus provinding justification for construing it by their conduct to the effect that the rent of $125 per month was to be a firm obligation of the defendants, regardless of income or earnings from the enterprise.

■ In considering the controversy here it is well to keep in mind the fundamental concepts in regard to contracts: that their purpose is to reduce to writing the conditions upon which the minds of the parties have met and to fix their rights and duties in respect thereto. The intent so expressed is to be found, if possible, within the four corners of the instrument itself in accordance with the ordinary accepted meaning of the words used. Unless there is ambiguity or uncertainty in the language so that the meaning is confused, or is susceptible of more than one meaning, there is no justification for interpretation or explanation from extraneous sources. It would defeat the very purpose of formal contracts to permit a party to invoke the use of words or conduct inconsistent with its terms to prove that the parties did not mean what they said, or to use such inconsistent words or conduct to demonstrate uncertainty or ambiguity where none would otherwise exist. Generally speaking, neither of the parties, nor the court has any right to ignore or modify conditions which are clearly expressed merely because it may subject one of the parties to hardship, but they must be enforced "in accordance with the intention as * * * manifested by the language used by the parties to the contract."[1]

■ ■ The parties here spelled out just how the proceeds from the operation of a theater should be applied: first, to cover all operating expenses, enumerating them; then, to pay the rent to the plaintiff; and finally, to divide the residue equally. The

---

1. Murphy v. Salt Lake City, 65 Utah 295, 236 P. 680, 683; see also Richlands Irr. Co. v. Westview Irr. Co., 96 Utah 403, 80 P.2d 458; Paggi v. Skliris, 54 Utah 88, 179 P. 739; Johnson v. Geddes, 49 Utah 137, 161 P. 910.

understanding thus expressed is plain and provides no justification for a finding, based upon conduct, that the defendants had a firm obligation to pay the rent regardless of income from the business. Unless uncertainty opens the door to extraneous explanation, the trial court is in no position of advantage in interpreting documents, and his views thereon are not indulged any special credit as are findings on issues of fact.[2]

A further contention of the plaintiff is that in any event the defendants made excessive expenditures in the operation of the business for the deliberate purpose of avoiding payment of rent and dividing profits with the plaintiff, for which it should have an accounting and adjustment. On this phase of the case the trial court rejected the plaintiff's contention, and further made an affirmative finding that, because of laches, the plaintiff is now precluded from asserting any claim to excessive expenses. In view of the fact that defendants furnished current monthly statements of account, to which no objection was raised until this controversy arose, the determination of the trial court in that regard is amply justified and should not be disturbed.

Reversed. Costs to appellants.

McDONOUGH, C. J., and WORTHEN, WADE, and HENRIOD, JJ., concur.

2. See 3 Am.Jur. 473.