493 P.2d 1003

**Jerry SKOUSEN, Plaintiff and Respondent,**

**v.**

**Alvin I. SMITH, Defendant and Appellant.**

**No. 11598.**

Supreme Court of Utah.

Feb. 4, 1972.

Irwin Arnovitz of Arnovitz & Smith, Salt Lake City, for defendant and appellant.

Leon M. Frazier and J. Brent Wood of Frazier & Wood, Provo, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a judgment in favor of plaintiff on a promissory note. Affirmed with costs to plaintiff.

The facts viewed more favorably to the plaintiff Skousen (plus some less favorable) may be related as follows: On February 1, 1962, Smith[1] not only prepared, but signed a personal note payable to Skousen due in two years. The note con-

tained the following provision: "It is agreed that the drawer of this note shall not be liable hereunder until and unless payment is received from . . . Walker *on* notes executed by him in the total sum of $13,977.70." The Walker notes were not paid when due. Several efforts had been made by Mr. Smith to collect them and some time after April 1964 he did receive $2,500 from Walker. He paid none of this to Skousen and testified that he credited the amount to some other note. Nothing more was paid by Walker, although there apparently was an effort to collect the balance. On May 23, 1967, over three years after the note signed by Smith became due, subject to the disputed language supra, Skousen filed suit therein and over four months thereafter, on September 12, 1967, Mr. Smith sued Walker on the notes and obtained judgment, offering to use it in Skousen's behalf to satisfy the note, which the latter refused.

Mr. Smith urges eight points on appeal. The only ones we consider canvassable are that 1) no cause of action had accrued in favor of Skousen, 2) that Skousen's second claim of delay by Smith in pursuing his claim against Walker was "appropriately taken," is in error.

1. Asserting a role as negotiator in a land deal in which one Coronado Company of which Skousen was a partner, sought to purchase apartment property from one Walker, where defendant's client, Stroller, as prospective purchaser from Coronado advanced money to clear up debts against the property, Walker signing two notes to cover, and Skousen personally signing one to Coronado for $6,988.85, the subject of this litigation.

We conclude that point 2 may be well taken, and in doing so, state that we do not base our decision in whole or in part on Finding No. 4, around which this point revolves.

We think the nub of this case is whether the note, the subject of this action, became due and payable when Mr. Smith received a $2,500 payment from Walker. The trial court held that it did and we are constrained to, and do agree.

▮ The whole thrust of Smith's contention is that the note should be read to eliminate the word "on" in the phrase "received from Walker *on* notes executed by him in the total sum of $13,977.70," and to substitute the word *"of"* in its place. In an amended answer, Smith, some five years after the execution of the note, now claims for the first time an equitable defense that the note be reformed on account of mutual mistake. Ordinarily such a contention, in equity, should be pursued at the earliest time and certainly within a reasonable time, which was not indulged here. Furthermore, there is no evidence here of any mutual mistake, save the favorable testimony of the defendant, by which the trial court need not be bound. Defendant's argument that Skousen, in urging Smith to press Walker in collecting the latter's notes indicates that Skousen knew he could recover only if Walker would pay is not necessarily acceptable since it is as consonant with a desire to get paid through Walker, if possible, as well as through Smith, since Smith had refused to pay his note or apply any part of what Walker had paid, on the note given to Skousen. At best the proof would tend to justify but a unilateral mistake. In addition to that, the fact persists that the document which defendant now urges did not mean what it says, was drafted and executed by the defendant. It is axiomatic that language in a written instrument is interpreted more strongly against a scrivener who executes it.[2] It is equally elementary that parties may be bound by the language they deliberately use in their contracts, irrespective of the fact that it appears to result in improvidence,[3] beyond and perhaps in excess of what the mythical reasonable prudent man might feel constrained to venture. The freedom of contract is not reserved to the more-than-average intelligent, but to his less fortunate less-than-average brother. It is only where their contracts are carried into the domain of equity on a raft of unconscionability so laden with shockingness as to justify the Chancellor

2. Guinand v. Walton, 22 Utah 2d 196, 450 P.2d 467 (1969) ; Jensen's Used Cars v. Rice, 7 Utah 2d 276, 323 P.2d 259 (1958) ; Cornwall v. Willow Creek Country Club, 13 Utah 2d 160, 369 P.2d 928 (1962) ; Restatement, Contracts, Vol. 1, Sec. 236.

3. Ephraim Theatre v. Hawk, 7 Utah 2d 163, 321 P.2d 221 (1958).

'in sinking both, that the sanctity of contracts should be molested.

CALLISTER, C. J., and TUCKETT and CROCKETT, JJ., concur.

ELLETT, J., concurs in the result.