**2022 UT 38**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In re WESTERN INSURANCE COMPANY in Liquidation

BONNER COUNTY,
*Appellant,*

*v.*

WESTERN INSURANCE COMPANY,
*Appellee.*

No. 20210187
Heard April 13, 2022
Filed October 27, 2022

On Direct Appeal

Third District, Salt Lake
The Honorable Paul Parker
No. 110917050

Attorneys:

Brent D. Wride, Salt Lake City, for appellant

Scott M. Lilja, Nicole M. Deforge, Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT and JUSTICE HAGEN joined.

JUDGE HARRIS filed a dissenting opinion, in which
JUSTICE PETERSEN joined.

Due to their retirement, JUSTICE HIMONAS and JUSTICE LEE did not
participate herein; JUSTICE DIANA HAGEN and
COURT OF APPEALS JUDGE RYAN M. HARRIS sat.*

---

* JUSTICE DIANA HAGEN became a member of the Court on May 18,
2022, but heard this case as a visiting judge prior to her confirmation.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Bonner County, an Idaho political subdivision, contracted with Pend Oreille Bonner Development, LLC (Pend Oreille) to construct several municipal projects. The County required Pend Oreille to obtain multiple surety bonds. Pend Oreille purchased these sureties through Western Insurance Company (Western). For reasons unspecified in the record, Pend Oreille ceased work on the projects before their completion. After Pend Oreille's default, Bonner County wanted to collect on the surety bonds. But around this same time, Western experienced financial troubles and was placed in liquidation.

¶2 Bonner County filed a claim with Western's liquidator (Liquidator) to recover on the surety bonds Pend Oreille purchased from the company. Several years later, the Liquidator issued a Notice of Determination, which concluded that the County should be paid only a portion of the amount it claimed to be owed. The Liquidator also sent the County a document titled "Release and Waiver" and asked the County to sign it. The document indicated that Bonner County waived its statutory forty-five-day objection period. It also stated that Bonner County's claim was "fully compromised and settled" and "not in dispute." Bonner County signed.

¶3 The Liquidator later learned that another construction company had continued work on the County's projects. Based on this new information, the Liquidator issued an Amended Notice of Determination which denied all the County's claims. Bonner County objected to the Amended Notice of Determination, and the parties requested a hearing in front of the district court.

¶4 Bonner County argued to the district court that the Release and Waiver prevented the Liquidator from changing its recommendation to the district court. The Liquidator countered that the Release and Waiver was not a settlement agreement, but a mechanism to permit Bonner County to waive the forty-five days Utah law gives a claimant to challenge a liquidator's decision. The district court concluded that each side had proffered a reasonable interpretation of the document and allowed them to present extrinsic evidence of the parties' intent. The district court concluded that the extrinsic evidence demonstrated that the parties did not intend the document to serve as a binding settlement agreement. The district court then allowed the parties to present evidence concerning the losses that Bonner County claimed to have suffered. Ultimately, the

2

court concluded that Bonner County had failed to demonstrate to the Liquidator that Pend Oreille's failure to complete the projects had cost it anything.

¶5 Bonner County appeals, claiming that the district court erred when it concluded that the settlement agreement was ambiguous. Bonner County further argues that it was error for the district court to consider extrinsic evidence of the parties' intent. Bonner County also contends that even if the district court could look at extrinsic evidence, it abused its discretion with respect to the admission or exclusion of certain pieces of that evidence. And it claims that the district court's ultimate decision—that Bonner County had not shown that it had suffered a compensable loss—was contrary to the weight of the evidence.

¶6 We agree with the district court that the Release and Waiver was ambiguous, and we conclude that the district court did not err in permitting the parties to present extrinsic evidence. Bonner County's challenges to the district court's evidentiary rulings fail because Bonner County has not demonstrated that the challenged evidence had any impact on the outcome. Bonner County has also failed to demonstrate that the court's findings are contrary to the clear weight of the evidence. We accordingly affirm the district court across the board.

## BACKGROUND

¶7 Bonner County entered into several development agreements with Pend Oreille for the construction of projects within the County.[1] The County required Pend Oreille to obtain surety bonds in case Pend Oreille failed to complete the bonded projects. Under the surety agreement, Pend Oreille paid a premium to Western. In return, Western promised that if Pend Oreille defaulted, Western would pay the County the amount it would cost to finish the projects, up to the policy limit. Pend Oreille completed some, but not all, of the projects Western bonded.

¶8 Around the time of Pend Oreille's default, and after several months of communication with the Utah Insurance Department,

---

[1] "On appeal from a bench trial, we view the evidence in the light most favorable to the district court's findings." *State v. Jok*, 2021 UT 35, ¶ 3 n.3, 493 P.3d 665. We recite the facts of the case as they are represented in the district court's order and trial transcript.

Western filed for liquidation. The district court[2] then issued a liquidation order (Liquidation Order) that placed Western in liquidation pursuant to Utah Code section 31A-27a-401.[3] The

---

[2] The statute indicates that liquidation proceedings should be heard by the receivership court. *See, e.g.*, UTAH CODE §§ 31A-27a-603(1)(b), –608. The receivership court is a district court appointed to preside over the liquidation proceedings. *Id.* § 31A-27a-102(33–34). For ease of reference, we refer to the receivership court in this case as the district court.

[3] The Utah Insurance Department oversees all insurance providers in the state. If an insurance company is in danger of financial failure, the Insurance Department can place the insurer in liquidation. A company may also voluntarily choose to place itself in liquidation. The district court issues a liquidation order that appoints a liquidator, who then must take possession of all the insurance company's property and administers it according to Utah Code. UTAH CODE § 31A-27a-401(1).

Once the liquidator has identified the claims on the insurer's assets, the liquidator reviews each of them and issues a notice of claim determination. *Id.* § 31A-27a-603(1)(a)(i), (2)(a). The notice of determination informs a claimant if the liquidator recommends that the claim be paid and in what amount. *Id.* § 31A-27a-603(2)(b).

A claimant who disagrees with the liquidator has forty-five days to submit an objection to the liquidator. *Id.* § 31A-27a-603(3)(a). If a claimant fails to submit an objection within this period, the determination becomes final. *Id.* § 31A-27a-603(3)(c).

Utah law requires a liquidator to "from time to time as determined by the liquidator," present "reports of claims settled or determined" to the receivership court. *Id.* § 31A-27a-608(1). However, a liquidator may "reconsider a claim on the basis of additional information and amend the recommendation to the receivership court." *Id.* § 31A-27a-603(10)(a). If a liquidator amends her determination of a claim, claimants must receive the same notice and time to object as they had when the claim was first determined. *Id.* § 31A-27a-603(10)(b).

If the liquidator does not alter her determination after the claimant's objection, the liquidator must ask the court to schedule a hearing. *Id.* § 31A-27a-607(2)(a). The receivership court may then hear the claimant's complaint, but it may consider only "the evidence

(continued . . .)

Liquidation Order appointed the Utah Insurance Commissioner as Western's Liquidator. The Commissioner then appointed Lennard Stillman as the Special Deputy Liquidator for Western.[4]

¶9 The County filed multiple claims totaling $5,615,359. The County asked the Liquidator to pay that amount out of Western's remaining assets. Three years later, the Liquidator issued a Notice of Determination (NOD) that recommended that the court approve payment for $3,743,533.45 of Bonner County's claims and deny the remaining $1,871,825.55.

¶10  The NOD instructed Bonner County that:

> The Liquidator's claim determination must be reviewed and approved by the Court pursuant to [Utah Code section] 31A-27a-608. Distribution will be based on a pro-rata percentage of assets available for distribution to each class of claim approved by the Court and shall be paid as directed by the Court. The Liquidator is currently unable to estimate the timing or amount of any distribution.
>
> Please review this letter and your records for accuracy. **If you agree** with the approved claim amount and priority classification(s) assigned, please have the enclosed Release and Waiver form signed and notarized and <u>return it to [the Liquidator] within 45 days from the date of this letter.</u>
>
> **If you disagree** with the Liquidator's determination of your claim either in full or in part you have the right to object to the determination of your claim. To object to the determination you must file a written objection . . . within forty[-]five days from the date of this notice. . . . <u>If you fail to file a written objection with the Court and with the Liquidator, within the specified time, you will</u>

---

upon which the liquidator made the determination of the claim." *Id.* § 31A-27a-607(2)(f).

[4] Although the briefs list Western Insurance Company as the appellee, the Utah Insurance Commissioner, acting in his capacity as the Liquidator of Western Insurance Company, and acting through Special Deputy Liquidator Lennard Stillman, is the party represented in this appeal. For clarity, we refer to the appellee as the Liquidator.

have waived your right to object and the Liquidator's determination will stand and you will have no further right of appeal.

¶11 The Liquidator also sent Bonner County a document titled "Release and Waiver," which contained the following language:

[The County], a claimant in the [Western] liquidation proceeding, in consideration of the recommendation of the Liquidator of [Western] to the supervising court, agrees that its [claims] in the liquidation proceedings be allowed [in] the amount of $3,743,533.45 . . . . Claimant does hereby . . . forever discharge the [Liquidator], individually and in his official capacity, . . . [and] the estate of [Western] and the State of Utah from any and all right, cause of action, claim or demand of whatsoever kind, nature or description at law or inequity [sic] or created by statute which it now has or which it or its successors and assigns shall or may hereafter have in relation to this claim . . . .

Claimant expressly waives all rights, including but not limited to rights to notice, and hearings either to court or before the [Liquidator] to which it is entitled under Utah Code 31A-27a-607 or otherwise and in any way connected with related to or arising from the [Western] liquidation relating to the referenced claim. Claimant understands and agrees that this claim as stated above is fully compromised and settled and is not in dispute.

It is expressly understood and agreed that Claimant's claim will be recommended for payment to the Third District Court in the Liquidation proceeding in the amounts stated above and that it shall receive [sic] a pro rata distribution on said amounts as the Liquidator is authorized or permitted to pay.

¶12 The County signed the Release and Waiver.

¶13 A few months after Bonner County signed and returned the document, a new construction company, Valiant Idaho, LLC, began work on the County's projects. The County did not notify the Liquidator that work had resumed on the bonded projects.

¶14 At some point, the Liquidator deployed two individuals to investigate the status of the County's projects. Their investigation

discovered that substantial improvements had been made to the projects after the Liquidator issued the NOD.

¶15 Based on the information he received about the projects' progress, the Liquidator sent Bonner County an amended NOD.[5] In the amended NOD, the Liquidator recommended that the district court deny all the County's claims. The Liquidator explained that the County had failed to establish that it needed funds to complete the bonded projects.

¶16 The County—as the statute permits—protested the amended NOD. *See* UTAH CODE § 31A-27a-603(10)(b). The County explained to the Liquidator that they had entered into a settlement agreement when the County signed the Release and Waiver the Liquidator had sent. Bonner County took the position that the Release and Waiver prevented the Liquidator from changing its initial determination. The County also alleged that the Liquidator had relied on bad information when he calculated the amended NOD. Specifically, the County asserted that the Liquidator improperly claimed that the projects were completed despite the evidence the County had provided that showed otherwise. The Liquidator remained unmoved by the County's complaint. Because the parties could not come to an agreement, the district court set a hearing to evaluate the County's claims and the amended NOD.

¶17 The County raised two primary arguments to the district court. The County first argued that the Release and Waiver, together with the initial NOD, formed a settlement agreement between the Liquidator and the County. The County argued that they had entered into a binding contract by which the County agreed to reduce its claims by nearly $2,000,000 and in return, the Liquidator agreed to recommend the County's reduced claims to the district court.

¶18 The County argued in the alternative that even if no settlement agreement existed, the County was still entitled to collect on the bonds to fund the projects that Pend Oreille had failed to complete.

¶19 The Liquidator argued that the Release and Waiver simply affirmed the statutory rights and obligations Utah law had already placed on each party and provided a mechanism for Bonner County to waive the forty-five-day period it had to object to the Liquidator's

---

[5] Nearly five years separate the initial NOD from the amended NOD.

determination. The Liquidator further argued that the County had failed to submit any evidence to support a claim that it needed additional funds to complete the bonded projects.

¶20  At oral argument, the district court first considered whether the parties had intended the Release and Waiver to be a binding settlement agreement. The court concluded that the Release and Waiver did not have "the indicia of a contract" and was ambiguous on its face. The court explained that "[t]he NOD and Waiver are ambiguous with regard to the relationship of [the Liquidator] and the County and with regard to the intent and rights and obligations of the County and [the Liquidator]. . . . [A]ny obligation of [the Liquidator] under the Waiver could only be found by inference."

¶21  The court reasoned that there were several ambiguities in the Release and Waiver, including who the parties to the agreement were and what obligations each party assumed. The district court also found ambiguity in the phrase "fully compromised and settled." The court further concluded that it was unsure what impact the document had on the Liquidator's statutory ability "to go back and amend any determination based on new and subsequent information."

¶22  Because the contract was ambiguous, the court allowed the parties to present extrinsic evidence "to determine the meaning of the NOD and the Waiver and the intent of the Liquidator and the County as to those documents." After considering evidence of the parties' intent, the court concluded that the Release and Waiver was "a standardized form allowed under the [Insurer Receivership Act] to speed up the claim determination process by asking claimants to agree to waive and release their statutory right to object to an NOD and does not contain language consistent with a bargained for settlement contract." On this basis, the court found that Bonner County and the Liquidator had not entered into a settlement agreement that prevented the Liquidator from amending the claim determination based upon new information.

¶23 The court then turned to the County's objection to the amended NOD.

¶24 While trying to convince the court that it was entitled to collect on its claim, the County offered into evidence a declaration of one of the Liquidator's employees, Ms. Tina Zinkgraf. The court admitted the affidavit without objection. However, later in the hearing when the Liquidator attempted to use Ms. Zinkgraf's declaration, the County objected to the declaration's use on the

grounds that it had been created after the Liquidator had already made his determination. The court overruled the County's objection.

¶25 The County then sought to enter an engineering report into evidence as proof that the bonded projects had not been completed. The Liquidator objected to the introduction of the report on the basis that the County had failed to lay any foundation for its admission. The County countered that the report should be allowed because it was one of the documents the Liquidator had considered when issuing the amended NOD. Despite the County's protests, the court concluded that evidence could not be admitted just because the Liquidator had reviewed it while making his determination. Instead, the district court believed that the County still needed to lay sufficient foundation for the document in compliance with the rules of evidence.

¶26 The court ultimately concluded that Utah Code section 31A-27a-603(10) gave the Liquidator the ability to reconsider the NOD after he learned additional information about the projects' status. The district court also concluded that "the County was required to establish the cost of completing the improvements bonded by Western in light of work completed on those improvements following the issuance of the NOD." The district court reasoned that the County had "submitted no evidence in [its] Objection to the Amended NOD sufficient for the Court to change the Liquidator's determination." "The burden of proof and procedures that may previously have required Western to prove to the County that the improvements were completed under the Bonds was reversed after the Liquidation Order was issued under the [Insurer Receivership Act]." The court decided that, under the Act, "upon issuance of the Amended NOD by the Liquidator[,] the County, as the claimant, was required to provide evidence sufficient to prove its claim, meaning evidence sufficient to show the Amended NOD denying its claim was incorrect."

¶27 The court further determined that the "Liquidator was also entitled to do its own investigation, to ask for additional information from the County, and to make a determination based on the information in the Liquidator's possession." Accordingly, the court ruled against the County in its bid to read the Release and Waiver as a settlement agreement and in its objection to the amended NOD. This resulted in Bonner County receiving none of the bond proceeds.

¶28 The County appealed.

## STANDARD OF REVIEW

¶29 The County raises six issues on appeal. It first contends that the district court erred when it found that the Release and Waiver was not a binding settlement agreement. "We review a district court's interpretation of a contract for correctness." *Brady v. Park*, 2019 UT 16, ¶ 29, 445 P.3d 395.

¶30 The County next argues that Utah Code section 31A-27a-607(2)(f) requires a district court to consider all the evidence that a claimant has presented to a liquidator.[6] Buried within this issue, the County has complaints about evidence the district court did not admit. Issues of statutory interpretation present legal questions which we review for correctness. *State v. Gallegos*, 2007 UT 81, ¶ 8, 171 P.3d 426. We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Beverly*, 2018 UT 60, ¶ 23, 435 P.3d 160.

¶31 In a similar vein, the County argues that the district court should not have admitted the entirety of Ms. Zinkgraf's declaration. As with the County's argument concerning evidence the court refused to admit, we review the district court's admission of evidence for an abuse of discretion. *Id.*

¶32 The County also avers that the district court erred when it held that the Liquidator was allowed to issue an amended NOD based on events that occurred after the Liquidation Order was entered. This is an issue of statutory interpretation, which presents a legal question we review for correctness. *Gallegos*, 2007 UT 81, ¶ 8.

¶33 Finally, the County asserts that the district court found the bonded projects were substantially completed despite the "uncontroverted evidence" to the contrary. A "trial court's underlying factual findings are reviewed under the clearly erroneous standard." *State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251.

---

[6] In its briefing, the County argued that Utah Code subsection 31A-27a-607(1)(f) requires a district court to consider all the evidence that was presented to the Liquidator. We believe this was a typo and that the intended citation is subsection 31A-27a-607(2)(f).

## ANALYSIS

### I. THE DISTRICT COURT DID NOT ERR WHEN IT CONCLUDED THAT THE PARTIES DID NOT INTEND THE RELEASE AND WAIVER TO CONSTITUTE A SETTLEMENT AGREEMENT

¶34 The County argues that the district court erroneously found that the Release and Waiver was ambiguous. It argues that the "terms of the settlement agreement" are "clear and well documented, and there was a meeting of the minds."

¶35 When it interprets a contract, a district court should "first look at the plain language [of the contract] to determine the parties' meaning and intent." *Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 2011 UT 35, ¶ 64, 266 P.3d 671, *abrogated on other grounds by Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, 422 P.3d 809. "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599. "But where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder." *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395.

¶36 "[A] contractual term or provision is ambiguous if it is capable of more than one *reasonable* interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.* ¶ 54 (citation omitted) (internal quotation marks omitted). When "uncertain meanings of terms, missing terms, or other facial deficiencies prevent the court from determining which of the proffered alternative interpretations the parties intended[,] . . . the ambiguity must be resolved by considering extrinsic evidence of the parties' intent." *Id.* ¶ 53 (citation omitted) (internal quotation marks omitted). Once the court has deemed a contract ambiguous, failure to "determin[e] the parties' intent from parol evidence is error." *Id.* ¶ 29 n.13 (citation omitted).

¶37 *Brady* provides a good example of these principles. There, the parties disagreed over the meaning of a provision in a loan agreement. *Id.* ¶¶ 1, 4. The loan's default interest rate was 10 percent but would be bumped up to 20 percent if the borrowers missed a payment. *Id.* ¶ 1. The contract provided that the interest rate would remain at 20 percent until the loan had been "brought current." *Id.* The parties disputed what it meant for the loan to be brought current. Under the borrowers' interpretation, the loan was brought

current once the late payment had been made. *Id.* ¶ 5. The lenders argued that "brought current" meant that the borrowers needed to make the late payment as well as any accrued interest. *Id.*

¶38 After a bench trial, the district court concluded that the lenders had the better interpretation and ordered the borrowers to pay interest. *Id.* ¶ 17. On appeal, the court of appeals reversed the district court's decision. *Id.* ¶ 22. Although the court of appeals did not think that the borrowers' and the lender's interpretations of the clause were "equally plausible," it agreed that the text of the clause "foreclose[d] neither." *Brady v. Park*, 2013 UT App 97, ¶ 35, 302 P.3d 1220. Because the contract was ambiguous, the court concluded that it needed to examine extrinsic evidence of the parties' intentions. *See id.* ¶¶ 32, 34–35. We granted certiorari review.

¶39  We decided, in line with decades of caselaw, that each party had offered a reasonable interpretation of the contract and that when that happens, a court should look to extrinsic evidence to determine what the parties intended the contractual language to mean.[7] *Brady,* 2019 UT 16, ¶¶63–65.

¶40 The majority reached this decision over a dissent that complained that the majority needed to define what it meant to offer a "reasonable" interpretation. *Id.* ¶ 127 (Lee, A.C.J., dissenting). The dissent contended that, in its view, an interpretation is not reasonable if an opposing party offered a better interpretation. *See id.* ¶¶ 127, 136, 167. Thus, according to the dissent, a contract could only be ambiguous if the parties presented two *equally plausible* interpretations to the court. *See id.* ¶¶ 127, 154, 166.

¶41 The majority responded to this criticism by acknowledging that although the court has "used the term 'reasonable' repeatedly for decades without defining the term further—presumably under the assumption that it is a bedrock term whose meaning was

---

[7] *Brady* cites *Ephraim Theatre Co. v. Hawk*, 321 P.2d 221 (Utah 1958), a case "explaining that a court may look to 'extraneous sources' only where the contract 'is susceptible of more than one meaning.'" *Brady*, 2019 UT 16, ¶ 54 n.40 (citing *Ephraim*, 321 P.2d at 223). *Brady* also cites *Winegar v. Froerer Corp.*, 813 P.2d 104 (Utah 1991), which states: "A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Brady*, 2019 UT 16, ¶ 54 n.40 (citing *Winegar*, 813 P.2d at 108).

obvious—[it] ha[s] provided a consistent explanation for what constitutes a reasonable interpretation sufficient to create an ambiguity." *Id.* ¶ 55 (majority opinion). "Under our caselaw a reasonable interpretation is an interpretation that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *Id.* "In other words, if the court determines that either of the competing interpretations could reasonably have been what the parties intended when they entered into the contract, then the contract is ambiguous." *Id.*

¶42 The County's argument contains echoes of the *Brady* dissent. In essence, the County asks us to decide that the Release and Waiver must be viewed as a settlement agreement because it believes that its reading of the document is significantly stronger than the reading the Liquidator offered to the district court.

¶43 Had the *Brady* dissent's view of the law prevailed, the County might be onto something. It may have had a path to victory by claiming that its interpretation of the Release and Waiver was superior to the construction the Liquidator offered to the district court. But that is not our law. *Brady* instructs courts to analyze whether two reasonable interpretations exist.[8] *Id.* ¶ 54.

¶44 This means that Bonner County must first convince us not that the district court picked the wrong interpretation, but that it

---

[8] Important policy considerations lie behind the decision to define "ambiguity" as existing when two reasonable interpretations exist versus two equally reasonable interpretations. As the majority in *Brady* explained, once a court has determined that more than one reasonable meaning exists, the court ought "not substitute [its] judgment for that of the parties by choosing what [the court] believe[s] to be the better of the two." *Id.* ¶ 55. However, as the *Brady* dissent explained, choosing to find ambiguity in a contract only when two equally plausible readings exist streamlines contract disputes. *Id.* ¶ 137 (Lee, A.C.J., dissenting). Although we can articulate reasons to prioritize streamlined contract resolution, Utah law has consistently favored uncovering and interpreting the contract consistent with the parties' intentions. *See id.* ¶ 55 n.45 (majority opinion) (citing *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990); *Meadow Valley Contractors*, 2011 UT 35, ¶ 69).

erred by concluding that the Release and Waiver was amenable to two reasonable interpretations. Bonner County fails to meet this burden.

¶45 The district court concluded that the Release and Waiver was ambiguous because the document could be read as a settlement agreement, like the County suggested, or as a waiver of some of the County's statutory rights, as the Liquidator advocated. It reasoned that the "[Release and] Waiver does not have the indicia of a contract as its terms are directed only to the County and, as [the Liquidator] is not referenced as a party to the Waiver, any obligation of [the Liquidator] under the Waiver could only be found by inference." Moreover, the court explained that the contract was split into two distinct documents and serious ambiguity existed as to the relationship between the two documents.

¶46 The district court also explained that, not only did the amended NOD and the Release and Waiver require a reader to make assumptions about the parties and the way the two different documents interacted to form a contract, but the documents also did not detail how they intended to change the rights and obligations of the parties under the statute. Specifically, the court found that the documents generally reaffirmed the statutory obligations and rights of each party. The district court was troubled by the fact that the documents were conspicuously silent regarding the Liquidator's statutory ability to amend a determination based on new information. The contract's silence on such a critical point caused the district court to conclude that the entire agreement was ambiguous. Because the contract was susceptible to different interpretations, the court concluded that it needed extrinsic evidence to understand what the parties intended to accomplish.

¶47 The County argues on appeal that the Liquidator's interpretation of the Release and Waiver is unreasonable. It claims that the Liquidator cannot argue that "the word 'settled' does not mean 'settled.'" It proclaims that "the words 'not in dispute' mean 'not in dispute.'" And that it would be "untenable to argue that this language does not result in a settlement of the County's claim." We take the County's point that the documents used the language of settlement agreements. We also see how a person could read the documents and reasonably conclude that the parties were attempting to create a binding settlement agreement.

¶48 But we also agree with the district court that the Release and Waiver was susceptible to another reasonable interpretation. It reads:

> Claimant expressly waives all rights, including but not limited to rights to notice, and hearings either to [the] court or before the [Liquidator] *to which it is entitled under Utah Code 31A-27a-607* or otherwise and in any way connected with related to or arising from the [Western] liquidation relating to the referenced claim. Claimant understands and agrees that this claim as stated above is fully compromised and settled and is not in dispute.

(Emphasis added.)[9]

¶49   The Release and Waiver indicates that the County is waiving its rights to notice and hearings under section 607. The purpose of Utah Code section 31A-27a-607 is to detail the exact process by which a claimant may protest a liquidator's determination.[10] That section also guarantees claimants a right to receive notice of a liquidator's determination of their claims, forty-five days to file an objection, and a right to a hearing with both the liquidator and the court if a consensus cannot be found. UTAH CODE § 31A-27a-607(1), (2). The

---

[9] The dissent takes this passive statement and casts it in a more positive and proactive light. When discussing this provision, the dissent does not precisely track the Release and Waiver's language that "Claimant understands and agrees that this claim as stated above is fully compromised and settled and is not in dispute." The dissent instead recites that "the Liquidator and the County had agreed to 'fully compromise[] and settle[].'" *Infra* ¶ 73. Similarly, the dissent declares that the parties "agreed to 'fully compromise[] and settle[]' the entire dispute." *Id.* ¶ 74. To be clear, the Release and Waiver never says that the "parties" agree to fully compromise and settle the claim. Bonner County—and only Bonner County—affirms that the claim is "fully compromised, settled, and not in dispute." That is a subtle shift in language, but in a case like this where the margins are thin, these linguistic subtleties matter.

[10] Utah Code section 31A-27a-607 instructs that claimants have forty-five days to file an objection before the liquidator files her determination. UTAH CODE § 31A-27a-607(1)(b)(i). However, if claims are not filed within the forty-five-day period, "the claimant may not further object to the determination." *Id.* § 31A-27a-607(1)(b)(ii). Section 607 then details the requirements for a hearing if a claimant does object to the liquidator's determination. *Id.* § 31A-27a-607(2).

Utah Code expressly contemplates that a "liquidator may accelerate the allowance of a claim by obtaining a waiver of an objection." *Id.* § 31A-27a-603(3)(d). The Release and Waiver can reasonably be read to advise the County that by signing the document, the County was waiving its ability to protest the Liquidator's determination of its claims.[11]

¶50  Read in this light, the Release and Waiver seems intended to ensure that the County was aware of everything the Release and Waiver implied. Under this reading, the sentence indicating that the claim would be "fully compromised and settled and [] not in dispute" is not the language of a settlement agreement, but an explanation that Bonner County was acknowledging that it was losing its statutory right to contest the Liquidator's determination. In other words, that language is not a promise but a warning that, if Bonner County signed, it would lose its statutory right to object.[12]

---

[11] This is, after all, how the NOD explained the Release and Waiver to Bonner County. The NOD provided that:

> **If you agree** with the approved claim amount and priority classification(s) assigned, please have the enclosed Release and Waiver form signed and notarized and <u>return it to [the Liquidator] within 45 days from the date of this letter.</u>
> **If you disagree** with the Liquidator's determination of your claim either in full or in part you have the right to object to the determination of your claim. To object to the determination you must file a written objection . . . within forty[-]five days from the date of this notice. . . . <u>If you fail to file a written objection with the Court and with the Liquidator, within the specified time, you will have waived your right to object and the Liquidator's determination will stand and you will have no further right of appeal.</u>

[12] The County argues that "[e]ven if parol evidence was admissible to explain an ambiguous term in the agreement, it could not be used to contradict other plain terms of the agreement." The County explains: "The unambiguous language of the release is controlling. Any contrary intention of the Liquidator is irrelevant." Though not entirely clear, it seems that the County claims the phrase "fully compromised and settled and [] is not in dispute" was a clear

(continued . . .)

¶51 In addition, the contract does not place any explicit obligation upon the Liquidator. Rather, the Liquidator's obligations can be gleaned only through inference. For example, the Release and Waiver states: "It is expressly understood and agreed that Claimant's claim will be recommended for payment to the Third District Court in the Liquidation proceeding in the amounts stated." Under the statutory scheme referenced in the document, the Liquidator was the only party capable of recommending the County's claim to the court. And he was statutorily obligated to submit his determination of the County's claims to the court whether the County signed the document or not. Thus, it is reasonable to think that the parties could have intended the Release and Waiver not as an alteration of any of the Liquidator's statutory obligations to the County but as an explanation of what would happen more quickly if the County waived its objection period.[13]

---

term of the contract. And the County appears to argue that even if other portions of the contract were ambiguous, the Court could not use extrinsic evidence to contradict the "plain meaning" of the portions of the contract which were clear in the first place.

The County's argument fails because, as detailed above, viewed in context, phrases like "fully compromised," "settled," and "not in dispute" are susceptible to two meanings. Bonner County has failed to convince us that the court erred in determining that the second reading was unreasonable.

[13] The dissent offers an interesting analysis of the statute and contends that the statute distinguishes between a liquidator "allowing" and "compromising" a claim. *Infra* ¶ 77. The dissent opines that when a liquidator allows a claim, she can still perform her duty under subsection 603(10)(a) to reconsider and amend a claim based upon additional information. *See id.* But, according to the dissent, when a liquidator compromises a claim, she agrees to waive her statutory power to amend the claim, so that a liquidator may be prevented from revisiting a compromised claim even if she later learns of relevant information. *See id.* This may or may not be a correct reading of the statute, but we are not asked to decide that question. The parties certainly have not raised or briefed it. For our purposes, we need only ask whether the documents reflect the parties' intent to incorporate that understanding of the statutory scheme into the Release and Waiver so strongly that the document's use of the word "compromised" renders a contrary reading

(continued . . .)

¶52 The County argues that the Liquidator's interpretation of the Release and Waiver is "untenable." However, we conclude, just as the district court concluded, that the document can be reasonably read as the Liquidator attempting to accelerate the claims process and to obtain the waiver of an objection that Utah Code subsection 603(3)(d) contemplates. Under this interpretation, the Release and Waiver serves as a notice of the County's statutory rights and a mechanism for the County to waive its forty-five-day objection period. Thus, two reasonable interpretations of the Release and Waiver exist. And under our case law, the existence of two reasonable interpretations necessitates the consideration of extrinsic evidence. The district court correctly concluded that the disputed documents contained ambiguities that could not be resolved without turning to extrinsic evidence of the parties' intent.

## II. THE COUNTY FAILS TO DEMONSTRATE THAT ANY ERROR THE DISTRICT COURT MADE WITH RESPECT TO THE ADMISSION OR EXCLUSION OF EVIDENCE WAS HARMFUL

¶53 The County claims that Utah Code section 31A-27a-607(2)(f) required the district court to consider all the evidence that the County had presented to the Liquidator. Based on this presumption, the County claims that the district court abused its discretion in deciding what evidence to admit or exclude. For example, the County argues the district court abused its discretion when it refused to admit two engineering reports that the Liquidator had in front of him when he issued the amended NOD. It also claims the court should not have admitted Ms. Zinkgraf's declaration because it attached several photographs taken after the Liquidator issued the

---

unreasonable. Neither party argued anything that resembles the dissent's statutory interpretation as a basis for understanding what the Release and Waiver was intended to accomplish. In light of that, it seems unlikely that either party ever read the Release and Waiver to incorporate the statutory construction that the dissent proffers.

But even if we were to assume that the parties intended that the Release and Waiver track the statute's nomenclature in the fashion the dissent suggests, the Release and Waiver describes the County's claims as both allowed and compromised in different paragraphs. At one point, the document says that the County "agrees that its [claims] in the liquidation proceedings be allowed." And at another it uses the "fully compromised and settled" language the dissent cites. This only highlights the ambiguity inherent in the Release and Waiver.

amended NOD and thus were not pieces of evidence the Liquidator had considered when making his determination.

¶54 These arguments raise some interesting questions about the type of evidence that is acceptable in a hearing concerning a claimant's objection to a liquidator's determination. But even if we assumed the district court abused its discretion, Bonner County has not demonstrated that it is entitled to relief.

¶55 A party asserting error not only carries the burden to show that the error occurred but also that the error prejudiced its case. *Morra v. Grand Cnty.*, 2010 UT 21, ¶ 36, 230 P.3d 1022; *Redevelopment Agency v. Mitsui Inv. Inc.*, 522 P.2d 1370, 1374 (Utah 1974). A party can demonstrate prejudice by showing that the error impacted the outcome of the dispute. In other words, a party must show that "there is a reasonable likelihood that, absent the error, the result would have been different." *Morra*, 2010 UT 21, ¶ 36.

¶56 The County hasn't done that here. For example, Bonner County argues that the district court abused its discretion in not admitting two engineering reports that were before the Liquidator when he reconsidered the claim. The district court refused to admit the reports because the County had failed to lay any foundation for them. The County claims—perhaps correctly—that the court should have considered all the evidence that the Liquidator had in front of him when he evaluated whether to issue the amended NOD. And it is not immediately apparent what additional foundation the district court contemplated. But even if we were to agree with the County that the district court abused its discretion, the County does not give us any indication as to how the district court's refusal to admit the engineering reports prejudiced its case. That is, Bonner County does not demonstrate how the outcome might have changed if the district court had considered the engineering reports.

¶57 The same can be said of the County's argument that the court erred when it admitted Ms. Zinkgraf's declaration and the attached photographs. Even if we assume that the district court abused its discretion in admitting photographs into evidence that were taken after the Liquidator reached his decision, the County has not demonstrated how those errors prejudiced its position. So again, the County has not shown that, "absent the error, the result would have been different." *Id.*

¶58 Because the County failed to demonstrate any harmful error, we affirm the district court's evidentiary rulings.

### III. THE COUNTY FAILS TO SHOW THE DISTRICT COURT ERRED WHEN IT CONCLUDED THAT THE INSURER RECEIVERSHIP ACT ALLOWS LIQUIDATORS TO AMEND DETERMINATIONS BASED ON CHANGED CIRCUMSTANCES

¶59   The County contends that the district court erred "in not honoring the provisions" of the Insurer Receivership Act. The Act provides that "the rights and liabilities of the insurer and of its creditors, policyholders, shareholders, members, and all other persons interested in its estate shall become fixed as of the day on which the order of liquidation is entered." UTAH CODE § 31A-27a-401(2). The County asserts that the district court should have considered the state of the bonded projects on the date of the Liquidation Order because, under the statute, Western's liability to the County became fixed on the day the court issued the Liquidation Order.

¶60   Though the County is not explicit, it seems to be referencing the district court's explanation of why the Liquidator was able to properly issue an amended NOD. The court explained: "Under Section 603(10) of the [Insurance Receivership] Act, the Liquidator's reconsideration of the NOD and issuance of the Amended NOD was properly based on additional information obtained by the Liquidator following issuance of the NOD." Utah Code section 31A-27a-603(10)(a) states that a "liquidator may reconsider a claim on the basis of additional information and amend the recommendation to the receivership court."

¶61   The Liquidator suggests that the County's reading of the statute would render section 603(10), which grants liquidators the ability to issue an amended NOD based on new information, meaningless.

¶62   He also notes that although the existence of a liability may have been finalized on a specific date, the extent of the liability still can change over time. Thus, in the Liquidator's view, reading the statute as freezing the amount of liability on the day the liquidation order is entered would cause some creditors to be significantly over- or underpaid—an outcome that runs contrary to the statute's purpose.

¶63   The County attempts to assuage any fears we may harbor about rendering sections of the Insurance Receivership Act irrelevant by asserting that a liquidator can only amend a determination made on a contingent claim. Utah Code section 31A-27a-401(2) states: "Upon issuance of the order of liquidation, the rights and liabilities

of the insurer and of its creditors, policyholders, shareholders, members, and all other persons interested in its estate shall become fixed as of the day on which the order of liquidation is entered . . . except as provided in [section 31A-27a-605]," a section dealing with contingent claims. The County argues that the language "except as provided in [section 31A-27a-605]" indicates that its reading of the statute would not make other parts of the code meaningless—it simply would confine their effect to contingent claims. However, the County does not develop this argument or provide any analysis of the statute to convince us that this reading correctly reflects what the Legislature intended the section to accomplish.

¶64  Instead, the County focuses its attention on another partially developed claim: it asserts that the district court must have erred because the "liquidation code does not alter contractual rights." As with its argument about contingent claims, the County does not provide us with any authority or analysis to back up its claim beyond making the sweeping legal statement.

¶65 The County raises interesting questions concerning what exactly can be considered contingent claims and the effect of the Insurer Receivership Act on contract obligations. Yet it fails to show us why the district court's analysis is faulty. We cannot make decisions when the issues are not clearly placed before us. "A party may not simply point toward a pile of sand and expect the court to build a castle." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248.

¶66 The County has not met its burden to establish that the district court misread the statute when it concluded that the Liquidator could recalculate his determination of the County's claims. Because none of the County's arguments undermine the validity of the district court's conclusion that the Liquidator had the authority to issue an amended determination, we affirm the district court.

IV. THE DISTRICT COURT NEVER FOUND THAT THE CONSTRUCTION PROJECTS WERE SUBSTANTIALLY COMPLETED

¶67 The County also argues that the district court erred when it found that the bonded projects had been substantially completed.[1]

---

[1] The County also argues that the district court improperly shifted the burden of proof to the County. The County explains that the bonds were meant "to protect a public entity and its citizens if a major construction project was left unfinished." According to the

(continued . . .)

The County claims that it demonstrated that the projects were not completed and that the district court instead held that the projects were completed against the clear weight of the evidence.

¶68  We do not see anything in the record that would indicate the district court found that the projects had been completed. Instead, the district court concluded that the County had failed to demonstrate that it would need to expend any money to finish the projects. Thus, the district court dismissed the County's objection to the amended NOD because the County failed to provide sufficient evidence to demonstrate that the Liquidator got it wrong when he concluded that the county had not suffered a loss. We affirm the district court's findings.

## CONCLUSION

¶69 The district court did not err when it concluded that the Release and Waiver was susceptible to two reasonable interpretations. The district court therefore did not err when it admitted extrinsic evidence to determine the parties' intent. The County challenged a few of the district court's evidentiary rulings but has failed to explain how, even if the district court abused its discretion, the outcome would have been different if the district court had ruled otherwise. The County has not met its burden of demonstrating that the court erred when it read the statute to provide that a liquidator can amend a determination of claims in response to changed circumstances. And we see no indication that

---

County, "[t]he district court acknowledged this principle but held that when an insurance company is placed into liquidation the burden shifts to the beneficiary under the bond." The County claims this was error because nothing in the Insurance Receivership Act "changes the general principles of surety law."

The County provides no legal backing for its claim that the district court improperly shifted the burden of proof to the County. Nor does the County engage with sections of the Insurance Receivership Act that, at first blush, seem to contradict the County's position. *See, e.g.*, UTAH CODE § 31A-27a-602 (instructing claimants to provide evidence of their claims to the liquidator and allowing liquidators to "require the claimant to present" supplementary evidence and information). Because the issue is not briefed in a way that allows us to opine on the issue, we do not resolve the question. *See Kidd*, 2019 UT 4, ¶ 35.

the district court made findings that were unsupported by the evidence. We affirm.

––––––––––––

JUDGE HARRIS, dissenting:

¶70 The Liquidator's interpretation of the relevant documents isn't a very good one. Even the majority appears to acknowledge that the Liquidator's interpretation isn't as strong or persuasive as the County's. *See supra* ¶¶ 43–44. But in the majority's view, the Liquidator's interpretation of the relevant documents is just good enough to qualify as "reasonable." On this point, I disagree, and therefore dissent from the majority's opinion.

¶71 A "reasonable interpretation" is one "that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *Brady v. Park*, 2019 UT 16, ¶ 55, 445 P.3d 395. In my view, the Liquidator's interpretation of the relevant documents is not at all in keeping with "the natural meaning of the words in the contract," and therefore cannot be considered a "reasonable" interpretation. *See id.*

¶72 As an initial matter, the relevant universe of documents consists of the initial NOD as well as the accompanying Release and Waiver. These documents were created and drafted by the Liquidator—the initial NOD was signed by the Liquidator—and were submitted simultaneously to the County for review. I view these documents, together, as the relevant contractual documents.

¶73 And when read together, these documents bear but one reasonable interpretation: that the Liquidator and the County had agreed to "fully compromise[] and settle[]" the County's claim on the bond. They specifically agreed—in a document drafted by the Liquidator—that the County's claim was "fully compromised and settled and is not in dispute." In my view, this language is dispositive, and indicates agreement by both the Liquidator and the County that they had reached a final and binding agreement to resolve the matter.

¶74 The majority believes that this extremely clear language can plausibly be interpreted merely as "an explanation that Bonner County was acknowledging that it was losing its statutory right to contest the Liquidator's determination." *See supra* ¶ 50 & n.12. I simply disagree. There certainly exist ways for contracting parties to

convey an intent to enter into a limited agreement to resolve merely one aspect of a dispute, such as—in this case—whether the County was willing to waive its statutory right to contest the Liquidator's determination within forty-five days. For instance, the parties could have agreed to language like this: "By signing below, Bonner County agrees to waive its right to challenge the Liquidator's determination within forty-five days." But that is not the language they chose. Instead, they agreed to "fully compromise[] and settle[]" the entire dispute. Those words are not ambiguous. The natural meaning of those words can only reasonably connote a broad and final agreement of an entire claim, and not just a limited agreement as to a statutory forty-five-day appeal right.

¶75 I also disagree with the majority's adoption of the district court's rationale for concluding that the contract documents are ambiguous. *See supra* ¶ 45. The district court believed that the relevant documents did "not have the indicia of a contract as its terms are directed only to the County" and because the Release and Waiver was signed only by the County. Again, I simply disagree. The basic indicia of a contract are offer, acceptance, and consideration. *See Rossi v. Univ. of Utah*, 2021 UT 43, ¶ 31, 496 P.3d 105 (stating that "the terms of" an "enforceable contract" are "defined by the meeting of the minds of the parties—through an offer and acceptance upon consideration"); *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985) (stating that "[t]he elements essential to contracts" are "offer and acceptance, competent parties, and consideration"). Here, the Liquidator sent an offer to the County in the form of the initial NOD and the Release and Waiver. As noted, the Liquidator signed the initial NOD. In that offer, the Liquidator informed the County that he was approving only part of the County's claim on the bond, and he instructed the County that if it agreed with the offer it should sign the "enclosed Release and Waiver," and that if it disagreed with the offer it should be aware of its right to appeal. The County accepted the offer by signing, without amendment, the enclosed Release and Waiver, which as noted recited that, after the County signed it, the County's claim would be "fully compromised and settled." And both parties agreed to provide consideration for the agreement. The County agreed to forgo its right to appeal—whether within the statutory appeal period "or otherwise"—the Liquidator's determination that some $1.8 million of its claim would not be paid. And the Liquidator committed to "recommend[]" the County's claim "for payment . . . in the amounts stated above." In short, the relevant documents have all the indicia of a binding contract.

¶76 The district court also believed that the contract documents were not specific enough; in particular and, as the majority puts it, the court "was troubled by the fact that the documents were conspicuously silent regarding the Liquidator's statutory ability to amend a determination based on new information." *See supra* ¶ 46. I acknowledge that the relevant documents do not specifically reference the Liquidator's statutory right to amend determinations based on new information. But again, the language "fully compromised and settled" is, in my view, far from "silent" on that point. When a claim is "fully compromised and settled," parties can't go back and revisit the claim based on the post-agreement discovery of new information. That's certainly true in the usual contexts in which disputed claims get settled; for instance, I cannot imagine a car crash plaintiff being allowed to seek additional damages, upon a flareup of his injury, five years after a settlement in which he agreed to accept an amount certain, at a particular moment in time, in full compromise of a disputed claim. When parties agree to fully settle their claims, that ends the matter.

¶77 And this conclusion is fully consonant with the governing statute. That statute allows liquidators to "allow, disallow, or compromise a claim that will be recommended to the receivership court." *See* UTAH CODE § 31A-27a-603(1)(b). There is presumably an intended distinction between "allowing" a claim and "compromising" a claim. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (stating that, "[w]hen interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning" (citation omitted) (internal quotation marks omitted)). Had the County not accepted the Liquidator's offer, the Liquidator would have been in the position of having partially "allowed" the County's claim, and in that situation the Liquidator would have been free to "reconsider" that claim "on the basis of additional information." *See* UTAH CODE § 31A-27a-603(10)(a). But once the County signed the Release and Waiver indicating that the matter was "fully compromised and settled," the matter was "compromised," a status fully contemplated and authorized by the governing statute. And as I read the governing statute and the relevant contractual documents, once a claim is "compromised"—as opposed to merely "allowed"—pursuant to a binding contract of settlement, the liquidator may no longer "reconsider" the claim based on new information.

¶78 Finally, I also disagree with the majority's statement that "the contract does not place any explicit obligation upon the Liquidator." *See supra* ¶ 51. Although stated in the passive voice, the Release and Waiver clearly indicates that the County's "claim will be recommended for payment to" the district court "in the amounts stated above." As the majority acknowledges, "the Liquidator was the only party capable of recommending the County's claim to the court." *See supra* ¶ 51. And I disagree with the majority's next statement that the Liquidator "was statutorily obligated to" make that recommendation regardless of "whether the County signed the document or not." *See supra* ¶ 51. In the absence of the County's agreement to the Release and Waiver, the Liquidator remained free to "reconsider" the County's claim based on new information. *See* UTAH CODE § 31A-27a-603(10)(a). But after the County signed the Release and Waiver, the matter was compromised, and the Liquidator was obligated—not by statute but by contract—to "recommend[]" the County's claim "for payment" to the district court "in the amounts stated" in the initial NOD. The Liquidator breached that contractual obligation when it did not recommend the County's claim to the district court in the amount specified in the initial NOD.

¶79 In his own mind, the Liquidator may well have intended the Release and Waiver to be nothing more than an agreement by the County to waive its forty-five-day objection period. But in my view, he did not choose words sufficient to convey that intention. Instead, he authored a document (and asked the County to sign it) in which he agreed that the County's entire claim was "fully compromised and settled" and in which he agreed to "recommend[]" the County's claim to the district court "in the amounts stated" in the initial NOD. Those words are not ambiguous, and they created a binding contract between the parties according to those terms. I therefore dissent from the majority's opinion.

———————